GOLDSTEIN OIL COMPANY & another[1] *vs.* C.K. SMITH
COMPANY, INC.

Worcester. October 5, 1984. — June 24, 1985.

Present: SMITH, CUTTER, & WARNER, JJ.

*Consumer Protection Act*, Exemption from liability. *Statute*, Retroactive effect. *Practice, Civil*, Summary judgment.

In an action for breach of contract by two Missouri corporations, doing business as a Missouri general partnership selling heating oil and other petroleum products at wholesale, against a Massachusetts corporation, the judge did not err in entering partial summary judgment in favor of the plaintiffs on a count in the defendant's counterclaim alleging violations of G. L. c. 93A, based on his conclusion that the transactions in issue had not occurred "primarily and substantially" in Massachusetts, as required by G. L. c. 93A, § 3 (1) (*b*), as in effect prior to St. 1983, c. 242, where it was undisputed that the Missouri partnership derived more than 95% of its revenue from transactions in interstate commerce, that the contract between the parties provided for delivery of oil to the defendant in Providence, Rhode Island, and that all deliveries under the contract had been made at Providence, except for two small deliveries, amounting to less than 2% of the total, made at Weymouth, Massachusetts, at the defendant's request. [249-250]

It was held that the amendment of G. L. c. 93A, § 3 (1) (*b*), by St. 1983, c. 242, repealing the interstate commerce exemption in certain consumer protection cases, did not have retroactive effect. [250-251]

CIVIL ACTION commenced in the Superior Court Department on November 18, 1981.

A motion for partial summary judgment was heard by *Andrew Gill Meyer*, J.

*James H. Barnhill* (*John M. Collins* with him) for the defendant.
*Victor N. Baltera* (*Frank J. Bailey* with him) for the plaintiffs.

---

[1] Novelly Oil Company.

SMITH, J. The plaintiffs, Goldstein Oil Company and
Novelly Oil Company, are Missouri corporations doing busi-
ness under the name of Apex Oil Company (Apex). Apex sells
heating oil and other petroleum products at wholesale to
utilities, industries, and smaller distributors. The defendant,
C.K. Smith Company, Inc. (Smith), is a Massachusetts corpo-
ration which sells heating oil and petroleum products, primarily
in Massachusetts.

On August 4, 1980, Apex and Smith executed a written
agreement whereby Apex agreed to supply Smith with heating
oil for the period from July 1, 1980, through June 30, 1981.
In November, 1981, Apex brought this action in the Superior
Court, alleging that Smith had committed several breaches of
the contract. Apex claimed that Smith had wrongfully rejected
a portion of the March, 1981, delivery, underpaid Apex for
the remainder of that delivery, and wrongfully rejected the
entire May, 1981, delivery. Smith answered, denying all liabil-
ity, and also filed a counterclaim in four counts. Count I of
the counterclaim alleged that during the course of the contract
Apex had intentionally engaged in unfair trade practices in
violation of G. L. c. 93A.[2]

On July 5, 1983, Apex filed a motion for partial summary
judgment as to Count I of the counterclaim. It claimed that it
was not subject to an action under G. L. c. 93A because it
derived more than twenty percent of its gross revenues from
interstate commerce and the transactions and actions at issue
did not occur primarily and substantially within the Common-
wealth. See G. L. c. 93A, § 3(1) (*b*), as in effect prior to St.
1983, c. 242.[3] The judge agreed with Apex's contention and
on September 9, 1983, ruled that Apex was entitled to partial
summary judgment as to Count I of the counterclaim. He
determined, sua' sponte, that there was "no just reason for

[2] The other counts of Smith's counterclaim alleged that Apex had under-
delivered oil in November, 1980, and January, 1981, and had violated the
contract by delivering the oil by barge instead of by an oceangoing vessel,
causing Smith to expend additional money.

[3] General Laws c. 93A, § 3(1) (*b*), was deleted by St. 1983, c. 242,
effective October 6, 1983.

delay" and directed the entry of judgment accordingly.[4] See Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). Smith appeals from that judgment. Smith contends that Apex failed to prove that the transactions and actions at issue did not occur primarily and substantially within the Commonwealth and that, in any event, the repeal by the Legislature of the "primarily and substantially" exemption (see n.3) must be given retroactive effect.

We summarize the following undisputed facts taken from the materials submitted to the judge in regard to the motion. Apex is a Missouri general partnership with a principal place of business in St. Louis. More than ninety-five percent of Apex's general revenue is derived from transactions in interstate commerce. Smith's principal place of business is in Worcester. It also has an office and storage space in New Bedford and leases additional storage in New Bedford and in Providence, Rhode Island.

In the agreement between Apex and Smith, Apex agreed to supply Smith with heating oil by delivering a cargo of approximately 200,000 barrels of oil to Smith during each of the months of July, October, and December, 1980, and January, March, and May, 1981. Smith also had the option to purchase an additional cargo of approximately 200,000 barrels. The agreement did not set a fixed price for the oil, but a base price was established which was to fluctuate, based on the average of two New York posted prices. The price was to be computed on the date that the oil was actually delivered or discharged into Smith's storage facility.

The agreement provided for delivery of the oil to Providence, but did permit delivery elsewhere, not necessarily in Massachusetts. Title to the oil passed to Smith on delivery. During the period of time under scrutiny here, all of Apex's deliveries to Smith were made at Providence with the exception of two

---

[4] We have previously stated that a judge should state "the reasons for his certification that there is no just reason for delay." *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 253 (1980). *Acme Engr. & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. 762, 764 (1980). The judge failed to do so, and we directed him to state his reasons.

small barge deliveries made to Weymouth, Massachusetts, in December, 1980. The two barge deliveries were made at Smith's request and accepted by it. They amounted to a total of 20,061 barrels, or less than one and six-tenths percent of the entire amount delivered over the course of the agreement. The total amount of oil delivered to Smith under the agreement was 1,270,958 barrels, and it accepted 1,075,258 barrels. During the term of the agreement, Apex made fourteen deliveries to Smith. Smith rejected part of the delivery of March, 1981, and rejected the entire delivery for May, 1981; those deliveries are the subjects of Apex's claim in this action.

Under c. 93A, § 2, unfair or deceptive acts or practices in the conduct of any trade or business are declared unlawful. At the time of the hearing on the motion (see n.3), c. 93A, § 3, provided in relevant part that G. L. c. 93A did not apply to "(*b*) trade or commerce of any person[5] of whose gross revenue at least twenty per cent is derived from transactions in interstate commerce, excepting however transactions and actions which (*i*) occur primarily and substantially within the Commonwealth . . . ." It is agreed that Apex derived in excess of twenty percent of its gross revenues from transactions in interstate commerce. Thus, our attention must be directed to the "primarily and substantially" exemption.

Apex had the burden of proving that "the 'transactions and actions' complained of did *not* occur 'primarily and substantially within the commonwealth'" (emphasis original). *Burnnham* v. *Mark IV Homes, Inc.*, 387 Mass. 575, 580 (1982). Apex argues that, in order to determine if conduct challenged under c. 93A occurred primarily and substantially in Massachusetts, the court must determine the location of that conduct. It contends that under that test all the transactions and actions that Smith claims violated c. 93A occurred outside Massachusetts. Smith argues that it is the place where it suffered injury as a result of the c. 93A violations that determines whether the transactions and actions occurred primarily and substantially within the Commonwealth. That place is Mas-

---

[5] "Person" is defined in c. 93A, § 1(*a*), to include partnerships.

sachusetts, it contends, because it (Smith) is located here, as are eighty percent of its customers. Smith further argues that, if our decision is that the place of injury is not determinative, we should make an analysis of the transactions and actions at issue. Such analysis would show, Smith says, that Apex did not meet its burden.

We start our analysis with the observation that "[t]he meaning of the phrase 'primarily and substantially' is not yet well-defined by case law." *Computer Syss. Engr., Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365, 1371 (D. Mass 1983). Without question, the leading case to date on the meaning of the phrase is *Burnham* v. *Mark IV Homes, Inc.*, 387 Mass. 575 (1982). In *Burnham*, a Pennsylvania manufacturer of modular homes delivered homes to a New Hampshire dealer for sale. The dealer sold the homes in New Hampshire to Massachusetts consumers. The homes were delivered and installed on sites in Massachusetts. Subsequently, the buyers of the homes brought an action against the manufacturer for negligence, breaches of warranty, and violations of c. 93A. *Id.* at 576-578. At trial, the defendant (manufacturer) filed a motion to dismiss the c. 93A claim on the ground that the transactions and actions complained of by the plaintiffs (buyers) did not occur primarily and substantially within the Commonwealth. The trial judge agreed with that contention and dismissed the c. 93A claim. On appeal, the Supreme Judicial Court held that the judge had erred in dismissing the claim. *Id.* at 577, 579.

The court, in interpreting the meaning of the phrase "primarily and substantially" as found in c. 93A, § 3(1) (*b*) (i), was writing on a clean slate. At the outset, the court noted that the Legislature's use of the phrase "precludes, at a minimum, a construction . . . that would allow a c. 93A action in every instance in which the defendant's transactions and actions 'within the commonwealth' would subject him to the jurisdiction under our long-arm statute, G. L. c. 223A." *Id.* at 580. The court then observed that one of the theories on which the buyers' case was submitted to the jury was that the manufacturer had violated the implied warranty of merchantability. *Id.* at 580-581. Such a breach is a violation of c. 93A, § 2. *Hannon*

v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 820-821 (1982). The court then noted that, from the evidence introduced at the trial, the conclusion was warranted that the homes were not fit for residential purposes at the times of the sales because the roofs of the homes were not watertight. *Burnham*, 387 Mass. at 581.

After finding a violation of c. 93A, the court then turned its attention to the question whether the manufacturer had presented evidence warranting a finding that its breach of the implied warranty of merchantability did not occur primarily and substantially within the Commonwealth. The court considered the location of that conduct. The undisputed evidence demonstrated that the sales of the homes to the buyers included delivery to sites in Massachusetts and installation on foundations at those sites. Because the sales of the homes could not have been completed until delivery and installation had taken place here, the court ruled that "[t]he transactions and actions of [the manufacturer] constituting a breach of the implied warranty of merchantability therefore occurred, not only 'primarily and substantially', but entirely, in Massachusetts." *Id.* at 582.

Unlike the court in *Burnham*, we are not concerned in this case with a breach of warranty claim, but with specific allegations of intentional violations of a contract.[6] Nevertheless, we

---

[6] Specifically, Smith complains in its counterclaim of the following four types of allegedly unfair conduct of Apex:

"a) The repeated failure and refusal to deliver oil to [Smith] as required whenever [Apex] was able to sell its oil to third parties at a price higher than that specified in the agreement with [Smith].

"b) A deliberate splitting up or 'shorting' of deliveries to [Smith] when it was economically advantageous for [Apex] not to provide a 'cargo' delivery as specified in the parties' agreement.

"c) The intentional overcharging or mispricing of oil delivered to [Smith].

"d) The delivery of 'off-spec' or low grade oil in violation of the contract specifications."

reject the "place of injury" test[7] advanced by Smith and instead follow *Burnham* and consider the place of the conduct that Smith alleges violated c. 93A. Because we are concerned here with a motion for partial summary judgment, we assume that all the facts set forth by Smith in its affidavit are true and that any inferences are to be drawn in its favor. *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983). Without dispute, the facts set out by Smith constitute violations of c. 93A. Moving to the central question, we ask whether, on the undisputed facts, Apex established that the transactions and actions (violations of c. 93A) did not occur primarily and substantially within the Commonwealth. We conclude that the motion judge was correct in allowing partial summary judgment.

Under the contract, the place designated for delivery of oil was Providence. According to the contract, title to the oil passed to Smith on delivery. Except for two barge deliveries made by Apex in Massachusetts at the request of Smith, which deliveries amounted to only one and six-tenths percent of the total oil delivered, there is no claim by Smith that other deliveries had been or would be made in the Commonwealth. Thus, Apex's failure and refusal to deliver oil to Smith (allegation a, n.6) and the delivery of "off-spec" or low grade oil (allegation d, n.6) could only have occurred in Providence. The "deliberate splitting up or 'shorting' of deliveries to [Smith]" (allegation b, n.6) could only have occurred at the place of shipment or the place of delivery. The place of shipment was not in Massachusetts. The place of delivery of over ninety-eight percent of the oil was in Rhode Island. Thus, that specific conduct did not occur "primarily and substantially" within Massachusetts. Finally, the "intentional overcharging or mispricing of oil delivered to [Smith]" (allegation c, n.6) must have occurred where the oil was priced and the invoice

---

[7] One reason we reject Smith's "place of injury" test is that, if adopted, it would effectively have eliminated the "primarily and substantially" exemption in most situations, as practically every Massachusetts plaintiff would suffer injury within the Commonwealth.

prepared. The place of those operations was not Massachusetts. Therefore, under the "place of conduct" test we hold that Apex has sustained its burden of showing that the transactions and actions complained of as violations of c. 93A did not occur primarily and substantially within the Commonwealth.[8]

Smith further argues that the statute repealing the interstate commerce exemption should be given retroactive effect. Generally, statutes are prospective in their operation unless a contrary intent is manifested by the Legislature. *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.*, 380 Mass. 212, 214 (1980). However, statutes relating to practice and procedure, rather than to substantive rights, are commonly treated as operating retroactively. *Welch* v. *Mayor of Taunton*, 343 Mass. 485, 487 (1962). *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 88 (1979). Also see *Cranberry Realty & Mortgage Co.* v. *Ackerly Communications, Inc.*, 17 Mass. App. Ct. 255, 258 n.3 (1983). Smith argues that the statute repealing the exemption is remedial because it is similar to jurisdictional statutes in that it did not create "new wrongs" but merely allowed Massachusetts courts to reach further to hear claims against those that have committed established "wrongs." Considering as we must, however, the obligations of the parties before and after the enactment of the repealing statute, see *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 781 (1975), it is clear that the statute created and enlarged c. 93A obligations. At the time that the allegedly wrongful acts were performed, Apex was bound not to violate its contracts with Smith and not to act fraudulently. Apex, however, if acting outside of the Commonwealth, as here, had no duty

---

[8] We do not consider Smith's alternative "transactional analysis" test. Under that approach, Smith would have the court analyze all aspects of the parties' relationship to determine which State had the greatest contact with that relationship. The court in *Burnham* v. *Mark IV Homes, Inc.*, 387 Mass. at 580 n.9, declined an opportunity to adopt that type of analysis because its resolution of the case did not require it to consider that approach. We reject it here because we believe the "place of conduct" test to be the only sound method of analysis in this type of case.

to conform its conduct to the more exacting business standards of c. 93A. The repealing statute imposed new substantive duties on businesses acting outside of the Commonwealth. Such a change in the established expectations of the parties would be entirely substantive. See *Hein-Werner Corp.* v. *Jackson Indus., Inc.*, 364 Mass. 523, 524-525 (1974).[9] Therefore, we decline to give the repealing statute retroactive effect.

The order allowing partial summary judgment is affirmed. The case is remanded to the Superior Court for trial on the remaining issues.

*So ordered.*

---

[9] In 1979, the Legislature eliminated loss of money or property as an element of an action under G. L. c. 93A. See St. 1979, c. 406, § 1. In *Smith* v. *Caggiano*, 12 Mass. App. Ct. 41, 43 (1981), we were asked to give the repealing statute retroactive effect. We declined and concluded that it should receive only prospective application because it affected substantive rights.