Sherman, PJ.
This is an action for breach of a written contract and for G.Lc. 93A, §§2,11 unfair and deceptive practices resulting from the defendant’s failure to pay brokerage commissions due to the plaintiff.
After trial, judgment was entered forthe plaintiff in the amountof$51,440.44 under Count I for breach of contract, and in the amount of $102,880.88 plus interest, costs and attorneys’ fees of $9,975.00 under Count II for violation of G.Lc. 93A
The reported evidence indicates that on January 4,1983, the parties executed a detailed written contractin'which defendant, J. Amicone Company, Inc. (“Amicone’’), a Massachusetts corporation, designated Worldwide Commodities, Inc. (“Worldwide”) , a New York corporation, as its exclusive broker, agent or “sale entity” for all sales of a myriad of dessert and bakery product substances and ingredients “manufactured or offered for sale” by Amicone. Worldwide’s designated sales territory encompassed all “retail businesses, food-service operations, bakery, dairy, confectionery manufacturers and/or distributors (wholesalers) of their products or products sold to them” in New York, New Jersey and Pennsylvania.
The relationship of the contracting parties was specifically and unequivocally defined by them in paragraph 8 of the brokerage agreement which states: “Itis agreed that Broker and its employees are independent contractors, and not employees or agents of the Company.”
The parties’ contract expressly provided that Amicone “agrees notto makeor effect *158 sales of goods, whether directly or indirectly, to any person, firm or entity” in Worldwide’s exclusive territory, and that if such sales were made, Worldwide would be entitled to full commissions thereon. The parties’ agreement thus entitled Worldwide to commissions of five percent (5%) of the base price of all sales within its territory, whether brokered by Worldwide or made directly by Amicone.
The procedure for commission payment specified in the agreement required Worldwide’s written confirmation of all sales to Amicone; Amicone’s issuance of signed contracts or invoices of each sale, showing commissions earned; and payment to Worldwide, by the second week after the end of the month in which Amicone received invoice payment, of all commissions plus a delinquency charge of one and one-half percent (11/2%) per month on late commission payments.
Paragraph 9 of the parties’ agreement states: “This Agreement is governed by the laws of the State of New York, excluding those relating to conflicts of laws.”
At some point after commencing work under the agreement, Worldwide discovered that direct sales to certain New York supermarket chains within its territory were being made by Amicone for which Worldwide received no commissions. Amicone’s conduct, violative of the terms of the parties’ agreement, prompted the parties to amend their contract by letter agreement of March 10,1983. The amendment defined “retail sales” as including “in-store bakery operations in supermarket chains,” exclusive of the specifically named New York markets to which Amicone had been selling directly, /¿though the parties discussed what, if any, other entities should be excluded from the contract, Amicone did not request any other exclusions and no other commercial entities were in fact excluded.
Worldwide's brokerage contract was ultimately terminated as of January 8,1986. The plaintiff instituted this action on January 20,1987. Pursuant to its breach of contract claim, Worldwide sought recovery of commissions due and owing on sales to various companies which it had brokered as detailed in invoices introduced at trial. Worldwide also sought commissions on other sales within its exclusive territory which had been made without its knowledge by Amicone. The total amount of commissions and interest sought by Worldwide was $51,440.44. Amicone introduced its own “Commission N ot Paid” statement which calculated the total commissions and interest it admitted were due Worldwide to be only $2,777.80. The discrepancy between the parties’ commission figures was solely attributable to the disputed “Mallett” sales.
Amicone’s witnesses testified that Amicone had entered into a “special agreement” with Mallett & Company, Inc., a Pennsylvania manufacturer, by which it purchased raw materials from Mallett, manufactured icings in accordance with Mallett’s confidential technology and formulas and sold the finished product back to Mallett. Arguing that sales of the “unique product” it manufactured under special agreement with Mallett were excluded from the parties’brokerage agreement, Amicone refused to pay any commissions to Worldwide on Mallett sales.
Subsequentto the court’s finding for Worldwide and its award of actual and punitive damages, attorney’s fees and costs, Amicone sought an appeal to this Division on a charge of error in the trial court’s rulings: (1) that sales to Mallett were within the scope of the parties’ agreement, thus entitling Worldwide to commissions on such sales; and (2) that the Massachusetts Consumer Protection Act, G.Lc. 93A, was applicable to the parties’ New York contract.
1. There was no error in the trial court’s ruling of law that Worldwide was entitled to full commissions and interest on all sales made by Amicone to Mallett
The parties’ agreement contained detailed, unambiguous provisions covering all material terms, including products sold, exclusive sales territory and commission payments. In accordance with such terms, Mallett was a Pennsylvania manufacturer within Worldwide’s exclusive sales territory and was not one of the businesses excluded from the contract by the parties’ March 10,1983 letter amendment. Sales to Mallett of icings, powders and other products listed in the brokerage agreement *159 were obviously goods “manufactured or offered for sale” by Amicone. Invoices covering such sales were issued and paid within the effective time period of the parties’ brokerage agreement
There was thus no merit to Amicone’s argument that its sales to Mallett of “icing stabilizers”[1] manufactured with Mallett's raw materials and formulas were somehow not sales of “goods manufactured” by Amicone. The terms “manufactured and offered for sale” are unambiguous terms of common and familiar usage.[2] Worldwide was entitled to commissions on all sales of icings and other goods “manufactured or offered for sale” by Amicone as defined in the parties’ agreement without qualification as to whose raw materials and formulas were used. If Amicone had intended to exclude Mallett sales from the scope of the parties’ brokerage contract, it should have done so by an amendment of the contract with Worldwide’s consent Having failed to do so, Amicone became liable for commissions to Worldwide upon all sales to Mallett.
2. There was also no reversible error in the court’s disposition of Amicone’s requests numbers 18,19,20 and 22[3] which essentially sought a ruling that G.Lc. 93A is inapplicable to the parties’ controversy.
Amicone relies in part on a contractual choice of law provision set forth as *160 paragraph 9 of the parties’ agreement that such “Agreement is governed by the laws of the State of New York, excluding those relating to conflicts of law.” By such provision, the parties clearly intended that “the validity and meaning as well as... [t] he mode of performance” of their agreement should be interpreted and construed under New York law. See, generally, Clark v. State Street Trust Co., 270 Mass. 140 (1930); Educational Elec., Inc. v. Brookline Tr. Co., 2 Mass. App. Ct. 866, 867 (1974). The scope of such choice of law provision encompassed all issues pertaining to contract construction,[4] including the rights and liabilities of the parties; contract validity, performance and breach; and the measure of contract damages in the event of breach. Morris v. Watsco, 385 Mass. 672, 677 (1982).
It is essential to note, however, that under paragraph 9 only the “agreement is governed” by the law of New York; the agreement itself is devoid of any clause defining or limiting all remedies or types of recovery available to the parties. See generally, J. A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795-796 (1986). Contrary to Amicone’s contention, therefore, New York law does not in this case define or restrict available types of recovery or remedies beyond those pertaining to the assessment of contract damages. Had the parties intended to avoid application of G.Lc. 93A or any remedies theoretically different from or unavailable under New York law,[5] they could have directly and easily done so by also including a forum selection clause in their agreement requiring ¿1 actions to be instituted in the courts of New York. The parties instead excluded New York “conflicts of laws” from their contract. In so doing, they may be deemed to have agreed to be bound in the forum state in which any suit was eventually commenced by the procedural rules and remedial laws applied by that forum in accordance with its own conflicts of laws principles.
Under the Massachusetts functional choice-of-law approach in multi-state contract cases, which is derived in large measure from the RESTATEMENT (SECOND) OF CONFLICTS OF LAW (1971), Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 632 (1985), a defendant may be subject to the provisions of G.Lc. 93A for its conduct in Massachusetts even where the underlying contract is governed by the laws of another state. See Computer Sys. Eng., Inc. v. Qantel Corp., 720 F.2d 59 (1st Cir. 1984), aff'ing 571 F. Supp. 1563 (D. Mass. 1983). This result is consistent with the sui generis character of c. 93A which is not dependent upon traditional tort or contract law concepts, but created “new rights and new procedural devices for the enforcement of such rights.” Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975). See also, Heller v. Silverbranch Construc. Corp., 376 Mass. 621 (1978). Claims for c. 93A unfair and deceptive practices may arise from conduct customarily associated with breach of contract, with torts, with a combination thereof or with acts which were not unlawful under common law, or any prior statute or regulation. Commonwealth v. DeCotis, 366 Mass. 234, 244 n.8 (1974). See also, cases collected in Computer Sys. Eng., Inc. v. Qantel Corp., supra, 571 F. Supp. at 1370. The conduct proscribed by G.Lc. 93A, §§2,11 is not simply a failure to fiilfill business obligations or a violation of contract terms, but those commercial acts or practices which are deceptive, unfair, fraudulent or tortious in nature. Id. at 1371. Such Massachusetts statutory remedy is thus applicable in this *161 case wherein contract damages are governed by New York law for the simple reason that a G.Lc. 93A recovery constitutes neither a measure of contract damages, nor compensation for a contract breach.
In short, the parties’ choice of New York law to govern their agreement neither precludes, nor is inconsistentwith, the application of c. 93Ato compensate Worldwide for that conduct of Amicone which was qualitatively distinct from its mere breach of contract.
3. There is no merit to Amicone’s primary contention that even if G.Lc. 93A is applicable in this case, its business conduct is exempt from the statute by virtue of Section ll[6] which provides in relevant part;
No action shall be brought or maintained under this section unless the actions or transactions constituting the alleged... unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.'
For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transaction and actions did not occur primarily and substantially within the Commonwealth, (emphasis supplied)
Amicone clearly failed to satisfy its burden of proving[7] that the unfair and deceptive conduct for which it is charged did not occur “primarily and substantially” in Massachusetts. Indeed the record instead establishes that Amicone’s conductwhich offended G.Lc. 93A occurred almost exclusively in Massachusetts. See generally, Goldstein Oil Co. v. C. K. Smith Co., 20 Mass. App. Ct. 243, 248-250 (1985).
Amicone is a Massachusetts corporation with its principal place of business in Malden. The goods that it manufactured and sold to Mallett and other companies for which it denied Worldwide commissions were made and delivered in this state.[8] The *162 unfair and deceptive conduct at issue was not the sale of Amicone products to third-party vendees, but the failure to pay commissions on such sales. The commissions Amicone withheld from Worldwide were payable under the parties’ agreement only upon both receiptofcustomer payments by Amicone in Massachusetts andAmicone’s issuance of paid invoice copies to Worldwide from Massachusetts. Although the loss of such commissions was sustained by Worldwide in New York, the pattern of unfair and deceptive conduct in which Amicone engaged and all contractual matters incident to such conduct, occurred in this Commonwealth. Makino U.S.A., Inc. v. Metlife Capital Credit Corp., 25 Mass. App. Ct. 302, 309-310 (1988).
4. Amicone’s final contention is that the evidence was insufficient to warrant the trial court’s finding that Amicone’s conduct constituted unfair and deceptive acts in violation of c. 93A, §11. By failing to file a Dist./Mun. Cts. R. Civ. P., Rule 64 (b) request for ruling of law that the evidence warranted or required a finding in the defendant’s ' favor, Amicone effectively waived any right to appellate consideration of the sufficiency of the evidence to support the court’s implicit findings of fact under c. 93A. See, e.g., Massachusetts General Hosp. v. Quincy, 348 Mass. 767, 791 (1965); Reid v. Doherty, 273 Mass. 388 (1930). In the absence of such arequestforruling, findings of fact must stand unless they are determined to be clearly erroneous because an appellate court is left, upon review of the entire evidence, with the definite and firm conviction that a mistake has been committed. See, e.g., Freyermouth v. Lufty, 376 Mass. 612 (1978); Capitol Bk. & Tr. Co. v. Richman, 19 Mass.App.Ct. 706, 708 (1985). The record in this case would not warrant such a determination.
A ruling that the court’s c. 93A factual findings were clearly erroneous would require this Division to adopt Amicone’s position that its failure to pay commissions on sales it made without Worldwide’s knowledge and in violation of the parties’ agreement, to not only Mallett but also to at least four other companies, resulted solely from its simple and sincere belief that such transactions were not within the scope of the parties’ brokerage agreement See Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979); Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1570 (1st Cir. 1989). However, the reported evidence and all inferences arising therefrom also permitted the trial court to find that Amicone engaged in a deceptive, three year course of conduct entailing prohibited sales within Worldwide’s territory, deliberate concealmentof such sales fromWorldwide, intentional non-disclosure of commission due on such sales and the refusal upon demand to remit commission and interest payments. Such evidence was thus sufficient to support the trial court’s findings that Amicone committed unfair and deceptive acts in violation of G.Lc. 93A, §§2 and 11. Given such evidence, any reversal of the court's implicit subsidiary findings on this issue would constitute an impermissible usurpation of the trial court’s factfinding role by the unlawful substitution of an appellate court’s assessment of evidentiary weight and credibility for that of the trier of fact. Such is not the proper function of appellate review.
There is also no merit to Amicone’s related contention that the court’s assessment of punitive damages was error in the absence of written findings that Amicone’s conduct was knowing and willful. Although c. 93A, §11 mandates a determination of knowledge or intent as a condition precedent to the assessment of multiple damages, neither that statute, nor Dist./Mun. Cts. R. Civ. P., Rule 52(a), requires that such determination or finding be reduced to writing. As Amicone again failed to file a specific request for ruling of law on the appropriate measure of c. 93A damages in this case, or on the alleged insufficiency of the evidence to support an award of punitive damages, no issue of c. 93A damages has been preserved or presented for appellate review.
The statement of the court's assessment of damages suggests, however, an order for an impermissible, duplicate recovery by Worldwide. The court awarded $51,440.44 under complaint Count I for breach of contract, and then doubled this award to arrive at its c. 93A assessment of damages. Where injury which violates c. 93A also *163 comprises elements of a common law cause of action, recovery of cumulative damages under multiple counts is not permitted where the claims are not factually separable. Calimlim v. Foreign Car Center, Inc., 392 Mass. 228 (1984); Charles River Construction v. Kirksey, 20 Mass. App. Ct. 333 (1985). To implement the court’s clear intention to award double damages herein under c. 93 A while avoiding any duplicative recoveiy by Worldwide, the judgment of the court is hereby amended to include the proviso that there is to be butonerecoyery and thatplaintiffWorldwide is limited toarecovery of thqse damages awarded under Count II.
Accordingly, the trial court’s finding for Worldwide on the first two counts of its complaint for breach of contract and G.Lc. 93A unfair and deceptive practices is hereby affirmed. Judgment for the plaintiff is to be entered in accordance with our order.

 The word “stabilizers” does not appear on any Mallett invoice, and there is no basis in the record for any conclusion that sales to Mallett were of any goods other than icings, powders etc. included under the parties’ brokerage agreement.

 To the extent that Amicone’s oral testimony was offered to vary the terms and conditions of the parties’ integrated, written contract, or to create an ambiguity in the contract where none had existed, such evidence would have been inadmissible under the parol evidence rule. See, generally, Keith v. Worcester, 338 Mass. 41 (1955); Ward v. Grant, 8 Mass. App. Ct. 213 (1979). Moreover, when such improper oral testimony is mistakenly admitted into evidence, it cannot be considered by the fact finder because the parol evidence rule is a rule of substantive law. Bettencourt v. Bettencourt, 362 Mass. 1 (1972); Scirpo v. McMillan, 355 Mass. 657 (1969); Frick Co. v. N.E. Insulation Co., 347 Mass. 461, 467 (1964).

 “18. The Plaintiff in this case is not a consumer. This complaint alleges the Defendant violated the terms of a Commercial Agreement This is not sufficient to support a c. 93A claim.
“Denied.
“19. The Agreement between the parties states that it shall be construed under the laws of the State of New York. Chapter 93A of M.G.L. is not a New York law.
“Denied, misstatement of fact
“21. G.Lc. 93A is not applicable where the alleged unfair and deceptive acts and practices occurred primarily and substantially in New York, Pennsylvania and New Jersey as alleged in this case, and where Defendants gross revenue was almost completely derived from transactions in Interstate Commerce as Plaintiff alleges in this case.
“Denied. Public policy makes business done in Massachusetts subject to c. 93A
“22. G.L.c. 93A Section 3(b) states that Exemnt Transactions include trade or commerce of any person of whose gross revenue at least 20% is derived from transactions in interstate commerce. The Plaintiff in this case neither alleges nor proved thatthe transactions complained of occurred primarily and substantially within this Commonwealth.
“Denied. Defense of interstate commerce must be alleged and proved by defendantand I find that it was not”
Request number 18 was properly denied as Worldwide’s complaint specifically references c. 93A, §11 and is cognizable as a claim by and against two commercial entities; namely, Worldwide, an independentbrokerage corporation, andAmicone, a manufacturing corporation. The parties’ contract expressly and unequivocally provided that Worldwide served as an independent contractor. The unquestionably commercial, non-private status of the parties and their transaction is obvious and has never been disputed by either party.
Amicone was not entitled to the rulings sought in requests 21 and 22 which misstated the law applicable herein, including c. 93A (See discussion, infra). The court erred in denying request 19 as a misstatement of fact for paragraph 9 of the parties’ agreement and the application of c. 93A herein were questions of law for the trial court. Such error was, however, harmless in view of the court’s actual denial of request 19 and its proper application of c. 93A in this case.

 Neither this Division, nor apparently the trial court, was asked to take judicial notice of New York contract law. We note that the report is devoid of any indication that Massachusetts contract law differs from New York contract law in any respect material to this case.

 To avoid the application of c. 93A herein, Amicone argues that the parties bargained for a contractual choice of New York law, intending to be governed exclusively by New York law which has no statute comparable to G.Lc. 93A §11. See, however, N.Y. Gen. Bus. Law, §349 (McKinney 1988) which creates similar rights and remedies for “deceptive acts or practices in die conduct of any business, trade or commerce...." It is thus clear that para. 9 of the parties’ agreement does not signify any intent by the parties to exclude all remedies available under business regulation or consumer protection statutes.

 Amicone’s requests numbers 21 and 22 were properly denied as misstatements of law. These requests were predicated on former Section 3(b) (1) of G.Lc. 93A which, as amended in 1967, stated: “(1) Nothing in this Chapter shall apply to... (b) trade or commerce of any person of whose gross revenue at least twenty percent is derived from transactions in interstate commerce, excepting however transactions and actions which (i) occur primarily and substantially within the Commonwealth....” Eliminating the double negatives, §3(b) (1) provided that all transactions occurring primarily and substantially in Massachusetts were covered by G.L.c. 93A irrespective of the relative amount of interstate commerce conducted by a defendant Section 3 (b) was entirely rewritten by St. 1983, c. 242 which eliminated the interstate commerce language now relied upon by Amicone. Moreover, such language could never have applied to Amicone’s conduct in the Mallett sales because the effective amendment date of the statute was July 20,1983 whereas the earliest Mallett sales were not invoiced and paid until 1984.
Contrary to Amicone’s contention, there is thus no statutory connection between adefendanf s interstate commerce revenues and its perpetration of unfair business practices “primarily and substantially” in Massachusetts. The latter exemption is now found in c. 93A §11. Former §11 had been amended in 1985 (SL1985, c. 278, effec. Dec. 17,1985) to require both parties to a c. 93A suit to have places of business in Massachusetts at the time of the alleged loss. Recognizing theundulyrestrictivenatureof this provision, the Legislature eliminated therequirementonjuly 28, 1986 by St.1986, c. 363 which amended §11 retroactively to cover all .suits brought or maintained on or after December 17,1985. The Legislature replaced the requirement that both parties have a Massachusetts place of business with the less onerous -requirement that the alleged unfair and .deceptive acts occur “primarily and substantially” within Massachusetts. Such requirement was not a condition precedent to a c. 93A suit, but was an exemption to be proved by a c. 93A defendant

 Amicone’s request number 22 was also properly denied because it misstated the burden of proof for a c. 93A exemption which, under both former §3(b)(l) and current §11, is on the defendant claiming such exemption, rather than on the plaintiff who has advanced the c. 93A claim. See, e.g., Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 580 (1982). We construe the court’s unartful ruling under request number 21 as a finding that Amicone’s conduct occurred in Massachusetts rather than “primarily and substantially in New York, Pennsylvania and New Jersey” as asserted by Amicone.

 All Amicone order invoices were designated “F.O.B. Origin”; most contained the notation “Pick up — Warehouse.”