**CLINTON HOSPITAL ASSOCIATION, Plaintiff, Appellee,**

v.

**The CORSON GROUP, INC., Defendant, Appellant.**

**No. 89–1813.**

United States Court of Appeals, First Circuit.

Heard May 11, 1990.
Decided July 11, 1990.

Altman, Boston, Mass., were on brief, for defendant, appellant.

Jack R. Pirozzolo with whom Richard E. Bennett and Willcox, Pirozzolo & McCarthy Professional Corporation, Boston, Mass. were on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, ROSENN,[*] Senior Circuit Judge, and CAMPBELL, Circuit Judge.

ROSENN, Circuit Judge.

This diversity case raises a difficult question under the consumer protection law of Massachusetts as to when actions and transactions alleged to constitute unfair or deceptive practices occurred primarily and substantially within the Commonwealth. Mass. Gen. Laws Ann. (MGLA) ch. 93A, § 11 (West 1989) (ch. 93A). The resolution of the question has serious implications for commercial and consumer transactions in the Massachusetts marketplace. Relying in part on that statute, the Clinton Hospital Association (Hospital), a Massachusetts charitable corporation, sued the Corson Group (Corson), a New York corporation, in the United States District Court of Massachusetts, alleging a breach of contract and unfair and deceptive business acts and practices.

At the close of the plaintiff's case, the defendant moved for a directed verdict which the district court denied. The jury returned a verdict in favor of the Hospital. After rejecting a number of post-trial motions and conducting an evidentiary hearing with respect to the primary issue on appeal, the district court entered judgment in favor of the plaintiff in the sum of $127,343.75 plus interest to date of judgment in the sum of $46,897.25 and attorney's fees of $50,000, for an aggregate judgment of $224,241. This included triple damages under the Massachusetts consumer protection law. The defendant appealed. We affirm.

I.

The Hospital, located in rural Massachusetts, had been experiencing difficulty in

Lawrence M. Slater with whom Alan E. Lipkind, Anthony E. Kilbridge and Lane &

[*] Of the Third Circuit, sitting by designation.

attracting physicians to its staff and it was apprehensive of a potential shortage as its older doctors retired. The Hospital decided to engage a recruiting firm to meet its need for physicians. The Hospital expected physicians who accepted a position with it to also practice in nearby communities. The president of the Hospital, Richard D. Mills, communicated with Corson, a physician search firm with its principal place of business in New York. Corson had no office in Massachusetts, but had one in North Carolina. Dr. Ralph Herz, medical director of Corson, and Mills discussed the proposed contract by telephone between New York and Massachusetts and in person in Massachusetts. Following these discussions, Corson drafted in New York a proposed contract and mailed it to the Hospital in Massachusetts, where Mills signed it.

Under the contract, Corson required a retainer check of $4,000.00, as an advance against a search fee of 25 percent of any recruited physicians' first-year salary or practice income guarantee. The Hospital also obligated itself to pay Corson's out-of-pocket expenses. After executing the contract, Mills returned it by mail to Corson in New York with the retainer check.

Under the contract, Corson obligated itself to assist the Hospital in structuring the positions to be filled and to advise it with respect to an appropriate inducement program. Corson also agreed to assist the Hospital in identifying, interviewing, screening, evaluating, and referring the appropriate physician-candidates. To assess the Hospital's situation and formulate a physician inducement program, Corson representatives, Dr. Herz and Judi Burger, a vice president, visited the Hospital in Massachusetts. Subsequently, Corson structured a physician recruitment program in New York for the Hospital and advised Mills in Massachusetts of it by telephone.

Corson prepared and sent out recruiting information from New York to physicians across the United States. Interested candidates responded by letter and telephone. These physicians replied primarily to Corson's New York office with information concerning their interests and references. Corson made all decisions in New York as to which physicians it would present to the Hospital and what information obtained from references it would withhold or present. When Corson reached a decision, it prepared candidate presentation forms in its New York office and mailed them to the Hospital in Massachusetts.

Comparisons of Corson's files with the candidate presentation forms sent to the Hospital reveal that Corson omitted negative and adverse information pertaining to the candidates whom they referred. Dr. Herz also considered the availability of adequate backup coverage for individual physicians, allowing physicians' free time as an absolute necessity to recruiting doctors for an area such as Clinton, Massachusetts. Herz, however, did not inform Hospital officials of this criteria during his meeting with them in Massachusetts.

Corson referred thirteen physicians to the Hospital. Relying on the often incomplete and inaccurate candidate presentation forms sent by Corson, Hospital officials interviewed these doctors in Massachusetts. Two of them, Doctors Taylor and Dougherty, accepted positions at the Hospital and agreed to establish medical practices in nearby communities. Dr. Taylor, however, was unable to fulfill his obligations because of an intestinal illness. Although Corson knew of Dr. Taylor's medical problem, it did not disclose this information to the Hospital.

Dr. Dougherty set up a practice in the Clinton area. The Hospital provided him with a guaranteed first-year income, free office space, relocation expenses, and an interest free loan. After his arrival, Dr. Dougherty became increasingly unavailable and did not participate in the activities of the Hospital. He left the area the following year. The Hospital later learned that Corson had withheld from the Hospital information received from Dr. Dougherty's references relating to Dougherty's lack of tact and his interest in obtaining fast money.

The foregoing facts were found by the district court following the evidentiary

hearing on the defendant's motion to vacate the judgment on the ground that its contractual activities did not occur primarily and substantially in the Commonwealth of Massachusetts. For this defense Corson relied on section 11, MGLA ch. 93A, which provides in relevant part:

No action shall be brought or maintained under this section unless the actions and transactions constituting the ... unfair or deceptive practice occurred *primarily and substantially in the commonwealth.*

(Emphasis supplied). By statute, Corson had the burden of proving that it qualified for the exemption under this section of the statute. Ch. 93A, § 11, ¶ 8. The district court held that Corson had not met its burden of proof.

## II.

On appeal, the defendant contends that the jury erred in finding that the defendant breached its contract with the Hospital. Corson also requests a new trial claiming the jury erred in calculating the Hospital's damages. We will not consider the issues concerning the jury's determination of liability and damages because Corson failed to timely raise these issues in the district court. *See In re Grand Jury Proceedings,* 875 F.2d 927, 932 (1st Cir.1989) (absent plain error, failure to raise objection in district court deprives appellant of right to raise matter on appeal). We now turn to the principal issue in which the defendant argues that the district court applied the wrong analysis in determining whether ch. 93A applied to the defendant's actions.[1]

In denying the defendant's motion for relief, the district court noted in its bench opinion that some Massachusetts courts

have utilized a "place of conduct" test to determine if a ch. 93A violation has occurred primarily and substantially in the Commonwealth. *See Goldstein Oil Co. v. C.K. Smith Co., Inc.,* 20 Mass.App.Ct. 243, 479 N.E.2d 728, 732, *further appellate review denied,* 395 Mass. 1104, 482 N.E.2d 328 (1985). However, the district court believed it should consider the whole range of contacts between the parties. Accordingly, it stated:

The Court rules that the context to be taken into account in determining whether the transactions and actions complained of occurred primarily and substantially within the Commonwealth in a contract framework such as this, include, ... A, the place of contracting, B, the place of negotiation of the contract, C, place of performance, D, the location of the subject matter of the contract, and E, the domicile, residence, nationality, place of incorporation and place of business of the parties. [Citation omitted]

.     .     .     .     .

The Court also has emphasized that the locus of the injury, while not determinative, is to be taken into account in such situations.

## A.

Corson contends that the district court actually applied a "locus of injury" test, while nominally applying a broad "choice of law" test. Corson claims that the plain meaning of ch. 93A and case precedent required the court unequivocally to adopt a "place of conduct" test. Under a place of conduct test, the defendant asserts there can be but one conclusion: the alleged deceptive and unfair acts were committed *outside* of Massachusetts. Therefore, the

---

**1.** Asserting error by the district court in denying Corson's motions for a directed verdict, Corson requests on appeal that this court overturn *Nickerson v. Matco Tools Corp.,* 813 F.2d 529 (1st Cir.1987). In *Nickerson,* this court held that the 1986 amendment to ch. 93A applied retroactively. *Id.* at 532. Under the previous 1985 amendment to ch. 93A, plaintiff could not bring a 93A claim unless the defendant had a place of business in Massachusetts at the time the violative act or practice was employed. 1985 Mass. Acts c. 278. The legislature amended ch. 93A on

July 28, 1986, striking out the provision requiring that both parties have a place of business in Massachusetts and adding the requirement that "the actions and transactions constituting the alleged ... unfair and deceptive act or practice [must have] occurred primarily and substantially within the Commonwealth." 1986 Mass. Acts c. 363. Relying on *Nickerson,* the district court held the 1986 amendment applied to the plaintiff's case. We perceive no merits in Corson's argument that the *Nickerson* court erred and, therefore, reject its request.

defendant contends that it qualifies for the exemption from ch. 93A claims.

The genesis of the issue before us is not the findings by the jury on the question of liability, but the evidentiary hearing conducted by the district court on the defendant's motion to vacate the judgment. The fundament for the determination of the legal question presented by the defendant required the trial court to make findings of fact which were not the subject of the jury's inquiry. As to the district court's findings of fact with respect to the evidentiary hearing it conducted, Corson does not assert that the district court clearly erred. Its quarrel is with the district court's application of the components of the statute to the facts, as to which it states, this court need not give the district court the deference that is normally given to its findings of fact.

The findings of the district court as to the nature, extent, and place of performance of Corson's activities were findings of facts as to which the standard of review is clearly erroneous. *See Jackson v. Harvard Univ.*, 900 F.2d 464, 468 (1st Cir.1990). Moreover, as we have already noted, the statute explicitly imposed the burden of proof on Corson, the defendant. The trial court's determination that Corson did not meet its statutory burden in proving that its activities and transactions with the Hospital were primarily and substantially beyond Massachusetts was a question of law. Our standard of review for questions of law decided by the district court is plenary. "When a trial court's conclusion is 'derived from the court's application of an improper standard to the facts, it may be corrected as a matter of law.' " *EAC Timberland v. Pisces, Ltd.*, 745 F.2d 715, 722 (1st Cir.1984). In this diversity case involving an issue primarily of state concern, we are "reluctant to interfere with a reasonable construction of state law made by a district judge, sitting in the state, who is familiar with that state's law and practices." *Rose v. Nashua Bd. of Educ.*, 679 F.2d 279, 281 (1st Cir.1982), *quoted in Dennis v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F.2d 893, 896 (1st Cir.1984).

The Massachusetts Supreme Court has considered the meaning of "primarily and substantially" as used in ch. 93A only twice. In both cases, the court addressed MGLA ch. 93A, § 3(1)(b)(i), as appearing in St.1967, c. 813, § 1. Chapter 93A, § 11 contains the same "primarily and substantially" language as previously used in MGLA ch. 93A, § 3(1)(b)(i).

In the first of these cases, *Burnham v. Mark IV Homes*, 387 Mass. 575, 441 N.E.2d 1027, 1031–32 (1982), the Supreme Court held that a Pennsylvania manufacturer's breach of an implied warranty of merchantability on modular homes constituted an unfair or deceptive act which had occurred not only "primarily and substantially" but entirely within the Commonwealth. The manufacturer in Pennsylvania had delivered modular homes to a New Hampshire dealer for sale. The dealer sold the homes in New Hampshire to Massachusetts consumers. The court found that the manufacturer could not breach its warranty until the dealer completed the sale of the modular units through installation of the units in Massachusetts. Therefore, the court held that the acts found to violate 93A were committed solely in Massachusetts. *Id.* The *Burnham* court explicitly left open the possibility that Massachusetts courts could consider other factors in determining if a violation of ch. 93A had occurred primarily and substantially in the Commonwealth. 441 N.E.2d at 1031 n. 9. The court thus rejected the Attorney General's suggestion in an amicus brief that it consider a list of factors similar to those considered by courts in choice of law situations, stating that its resolution of the issue did not require consideration of the Attorney General's suggestions in depth *at this time. Id.*

Several years later, in *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662, 664 (1985), this court certified to the Massachusetts Supreme Court the question, among others, of whether the *Bushkin* defendant was "entitled to the exemption of G.L. ch. 93A, § 3(1)(b)(i) in that the alleged actions forming the basis of the Chapter 93A claim did not occur

'primarily and substantially' in Massachusetts." The alleged deceptive or unfair acts consisted of statements made telephonically by the Massachusetts defendant to the plaintiff investment banker in New York. *Id.* 473 N.E.2d at 672. The plaintiff claimed that during these phone calls the defendant falsely represented to the plaintiff that the defendant would pay for the plaintiff's services. *Id.* In holding that the alleged violative acts or practices did not occur primarily in the Commonwealth, the court found that the defendant had made the statements at issue in Massachusetts but the plaintiff had received and acted on the statements in New York. *Id.* at 672. The court also found that the plaintiff incurred its alleged loss in New York. *Id.*

As to whether the violative acts or practices occurred primarily and substantially within the Commonwealth, the *Bushkin* court had very little conduct to consider; it "was able to conclude that the paucity of Massachusetts conduct was unmistakable." *Makino v. Metlife Capital Credit*, 25 Mass.App.Ct. 302, 518 N.E.2d 519, 524 (1988). Without offering any label for its approach or identifying any test, the court believed that the evidence was sufficient to warrant a finding that the defendant's actions did not occur primarily and substantially within the Commonwealth. The court made it clear that there was no need to engage in any broader analysis of the issue, but that if it were required to do so, as it was in its functional approach to the choice-of-law question discussed earlier in its opinion, the result would be the same. 473 N.E.2d at 672.

Were we to look only at the three factors considered by the *Bushkin* court, we would conclude that the defendant in this case committed the deceptive and unfair acts primarily and substantially within the Commonwealth of Massachusetts. The first *Bushkin* factor requires consideration of where the defendant committed the deceptive or unfair acts or practices. The district court in the instant case found that the locus of the acts complained of was primarily in New York. We cannot say this finding is clearly erroneous. However, we emphasize that the defendant's offensive conduct did not expire at the perimeters of New York. First, although the acts originated in New York, it was intended that their force and input influence the plaintiff's behavior in Massachusetts. In this objective, the defendant succeeded. With the information it obtained from the Hospital in Massachusetts, Corson prepared a physician inducement program in New York which proved to be, according to evidence adduced by the Hospital, grossly inadequate. *See A.F.M. Corp. v. Corporate Aircraft Management*, 626 F.Supp. 1533, 1549 (D.Mass.1985) (activity occurred primarily in Massachusetts where ch. 93A claim was based on a report written from an audit conducted in Massachusetts, even though the defendant prepared the report in Texas and sent it to New York). From New York, the defendant orchestrated the interview process in Massachusetts requiring the Hospital to unnecessarily tax the time of community leaders, Hospital trustees and employees in interviewing candidates whom Corson knew to be unqualified or who had minimal interest in relocating to the rural areas in Massachusetts. When Corson representatives were in Massachusetts, the defendant also committed unfair or deceptive acts by failing to inform the Hospital of crucial information relating to the inducement program.

Second, *Bushkin* considered where the plaintiff received and acted upon the deceptive or unfair statements. The location of the plaintiff when the plaintiff acted upon the deceptive or unfair statements is significant in determining whether the complained of acts occurred primarily and substantially within the Commonwealth, especially when, as here, they involve deception. The location of the dissembler at the time he makes a deceptive statement is not the linchpin of the deception for the purpose of the consumer protection law. To illustrate, the state from which the defendant makes a deceptive statement is of little relevance when it is telephoned from an airplane on a cross-country flight to a plaintiff on the ground. Rather, the critical factor is the

locus of the recipient of the deception at the time of reliance.

The victim's ingestion of a deceptive statement and the subsequent effects from reliance on it are what give the deceptive statement its venomous sting. The site of the victim's ingestion is therefore critical to a determination of whether the deceptive or unfair acts were committed primarily and substantially in the Commonwealth. In this case, the Hospital received and acted upon each of the incomplete and misleading candidate presentation forms at its facilities in Massachusetts. We emphasize the plaintiff's receipt of and reliance on the misrepresentations because of ch. 93A's requirement that courts consider the "actions and *trans*actions" from which the claim arises. The word "transaction" necessarily implies "activity involving two parties."[2] Therefore, appropriate asseveration should be given to the activity of the plaintiff in acting on Corson's candidate presentation forms in determining whether the violative actions and transactions occurred primarily and substantially within the Commonwealth.

The third *Bushkin* factor requires courts to look at the situs of plaintiff's losses due to the unfair or deceptive acts or practices. We are mindful of warnings that courts should not make the "place of injury or loss" determinative. *Makino*, 518 N.E.2d at 522; *Goldstein*, 479 N.E.2d at 731. However, *Bushkin* does not withdraw the place of loss from the factors worthy of consideration. 473 N.E.2d at 672. Here, the plaintiff incurred its losses in Massachusetts. "There was a 'causal connection between the deception and the loss and ... the loss was foreseeable as a result of the deception.'" *Makino*, 518 N.E.2d at 523–24, *quoting International Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 443 N.E.2d 1308, 1314 (1983).

*Bushkin* and *Burnham* do not provide a bright line test to determine when actions or transactions violating ch. 93A occur primarily and substantially within the Commonwealth of Massachusetts. We believe that these cases reveal, especially *Bush-*

*kin*, an inclination by the Massachusetts Supreme Court to adopt, when and if necessary, a pragmatic, functional analysis of the significant factors that provide illumination on when actions or transactions occur primarily and substantially within Massachusetts. The Massachusetts Supreme Court has not engaged in such an analysis when the question is readily determinable by a narrow review of the evidence.

Two intermediate appellate cases have confronted the decision avoided in *Burnham* and *Bushkin* whether to adopt a functional analysis in the ch. 93A context. In the first, *Goldstein Oil Co. v. C.K. Smith Co., Inc.*, 479 N.E.2d 728, 731 (Mass.App. Ct.), *further appellate review denied*, 395 Mass. 1104, 482 N.E.2d 328 (1985), the court held that, in a breach of contract context, courts should apply a "place of conduct" test rather than a "place of injury" test to determine whether conduct in violation of ch. 93A occurred primarily and substantially within the Commonwealth. The court stated it was rejecting a transactional approach which would require it to analyze all aspects of the parties relationships to determine which State had the greatest contact with the relationship. 479 N.E.2d at 732 n. 8. Nonetheless, the court then proceeded to examine and weigh the undisputed salient facts to ascertain where the violative conduct occurred and concluded that the defendant to the chapter 93A claim had not met its burden of proving that the transactions and actions complained of did not occur primarily and substantially within the Commonwealth. *Id.* at 731–32.

In the second case, *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 518 N.E.2d 519, 524 (Mass.App.Ct.), *further appellate review denied*, 402 Mass. 1101, 521 N.E.2d 398 (Mass.1988), the court considered the same question raised in *Goldstein* but with a more comprehensive set of facts. For this reason, the *Makino* case illustrates even more significantly our view that no one factor can determine the approach to the issue. The court contrasted *Bushkin* and *Goldstein*, where so little oc-

---

**2.** Webster's Third New International Dictionary   2425 (1986).

curred in Massachusetts, with the facts before it where "the factors [were] more complex, and the process of measuring and weighing, which flows from the words 'primarily and substantially,' [was] more identifiable—although not fundamentally different from the analysis the courts were required to perform in *Bushkin* and *Goldstein.*" 518 N.E.2d at 524.

The *Makino* court accordingly "considered that the preponderance of the wrongful conduct occurred in Massachusetts and that the essential elements of the transaction—the sales, the financing deal, and the delivery of the machinery—took place in Massachusetts." *Id.* On this basis, it concluded that the actions and transactions complained of occurred primarily and substantially in Massachusetts. *Id.*

In light of our reading of the pertinent Massachusetts cases, we hold that the district court did not err in adopting a functional analysis of the relevant factors in determining whether the actions and transactions constituting the unfair or deceptive practice occurred primarily and substantially in Massachusetts. Perhaps unnecessarily, but not inappropriately, the district court reviewed other factors which the *Bushkin* court had no reason to consider on the record before it. The functional and pragmatic analysis by the district court in this case required a process of "measuring and weighing," particularly where the factors were more complex. *Makino,* 518 N.E.2d at 524. The district court's decision is supportable under such an analysis, especially when the statute places on the defendant the burden of proving that the actions and transactions at issue did not occur primarily and substantially within the Commonwealth.

### III.

In sum, we conclude that the district court's findings of fact were not clearly erroneous and that it committed no error of law in holding that the defendant failed to prove that the actions and transactions constituting the unfair or deceptive acts or practices under ch. 93A did not occur primarily and substantially within the Com-monwealth. Accordingly, the district court's judgment is AFFIRMED.