**AMERICAN MANAGEMENT SERVICES, INC.,**
Plaintiff,

v.

**GEORGE S. MAY INTERNATIONAL CO. and Donald J. Fletcher,**
Defendants.

Civil Action No. 95–12155–NG.

United States District Court,
D. Massachusetts.

April 1, 1996.

Gregory C. Keating, Karen M. Collari, Thomas E. Shirley, Choate, Hall & Stewart, Boston, MA, for George S. May International Company and Donald J. Fletcher.

Mark A. Berthiaume, Goldstein & Manello, P.C., Boston, MA, for American Management Services, Inc.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. INTRODUCTION

Before me is a Motion by defendants George S. May, and Donald J. Fletcher To Stay This Proceeding Given the Existence of Parallel State Court Proceedings Currently Pending in Illinois, and To Dismiss Counts I and II as They Fail to State a Claim as a Matter of Law, filed October 3, 1995 [docket entry 2]. For the reasons set forth below, defendants' motion is **ALLOWED**.

This action involves a dispute between two management consulting firms, plaintiff American Management Services, Inc. ("AMS") and defendant George S. May International Co. ("May"). In early 1995, seven May employees quit to take up employment with AMS. They did so in spite of the fact that they had all signed non-competition agreements which prohibited them from using proprietary information or working in similar business for six months after leaving May.

In response to this mass exodus, May instituted legal proceedings in Illinois against the former employees, and against AMS (collectively "the Illinois actions"). May instituted actions against five of the employees in the Circuit Court of Cook County, Illinois. These actions alleged violation of non-competition agreements. May also instituted actions against two other former employees in federal district court (also in Illinois), seeking arbitration over alleged breaches of non-competition agreements. In addition to suits against individual employees, May also instituted an action in the Circuit Court of Cook County against AMS, charging it with tor-

tious interference with prospective advantage and tortious interference with contract.

In September and October of 1995, four of May's five actions alleging breach of non-competition agreement were dismissed. The reasons for those dismissals are not apparent from the record before this Court, however it is apparent that May was given leave in each case to amend its complaint.[1] Also in October, 1995, one of May's actions seeking arbitration was transferred to this Court. On October 27, 1995, the Circuit Court of Cook County denied AMS's motion to dismiss the complaint against it for lack of personal jurisdiction, and AMS's petition for leave to appeal to the Illinois Appellate Court was denied on December 21, 1995.

AMS commenced the instant action in Middlesex Superior Court on September 28, 1995 and it was removed to federal court by defendants. In this action AMS charges that the civil actions instituted by May in Illinois constitute violations of M.G.L. ch. 93A (Count I), abuse of process (Count II), tortious interference with advantageous business relationships (Count III), and tortious interference with prospective advantage (Count IV). Also named is defendant Donald J. Fletcher, the president of May.

Currently before the Court is defendants' Motion to Stay Proceedings and to Dismiss Counts I and II. For the following reasons, this motion is **ALLOWED**.

## II. DISCUSSION

### A. Dismissal of Counts I and II

#### 1. Standard of Review

■ It is not proper to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

---

1. On January 4, 1996, May was given leave to amend its complaint in its action against AMS by adding all of the former May employees as defendants. The amended complaint asserts that the former May employees violated a term of their employment agreements which prohibits them from recruiting certain other May employees to leave their employment with May during the six months after the termination of their own employment.

In making this determination, a court should accept the well-pleaded complaint as true and indulge every reasonable inference in favor of the plaintiff. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). This standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992). "[A] reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions. Empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." *Id.* (citations and internal quotations omitted).

### 2. *Dismissal of Count I (Chapter 93A)*

In Count I, AMS alleges that by instituting the various lawsuits described above, May and Fletcher violated the Massachusetts Consumer Protection Act, M.G.L. ch. 93A § 11. This act creates a cause of action against those who engage in unfair or deceptive trade practices or unfair methods of competition.

Defendants move to dismiss this count because, they contend, the violations of Chapter 93A alleged by plaintiffs did not take place "primarily and substantially within the Commonwealth." The statute provides that "[n]o actions shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." M.G.L. ch. 93A § 11. The statute places the burden of proof on this issue on the defendant. *Id.*

Plaintiffs oppose this motion by claiming that "[b]ecause AMS has alleged that the Defendants have acted (and will continue to act) in Massachusetts," the question of where the violations occurred is one of fact which is not susceptible to a motion to dismiss. (Plaintiff's Opposition at 19). This argument is, simply put, sophistry.

First, nowhere in the complaint is there any allegation that defendants acted in Massachusetts. The sum total of the allegations contained in the complaint is that defendants instituted the aforementioned lawsuits in Illinois. The word "Massachusetts" never appears in the factual recitation except to identify the domicile of the plaintiff.

Moreover, even if the complaint could be read to allege some activity in Massachusetts (e.g. service of process), there is no reasonable interpretation of the allegations in the complaint suggesting activities occurring "primarily and substantially" in Massachusetts. The only wrongdoing alleged in the complaint is the institution of lawsuits in Illinois. The prosecution of these lawsuits will, presumably, take place entirely in Illinois. It is thus patently clear that even if some of the activities related to the lawsuits take place in Massachusetts, they will "primarily and substantially" take place in Illinois.

The case law cited by plaintiffs does nothing to undermine this analysis. The Massachusetts Supreme Judicial Court has considered the meaning of the term "primarily and substantially in Massachusetts" on only two occasions, neither of which seems particularly germane here.

In *Burnham v. Mark IV Homes*, 387 Mass. 575, 441 N.E.2d 1027 (1982), the Court held that a Chapter 93A violation arising from the breach of an implied warranty of merchantability on modular homes takes place at the point of installation. To the extent that such a breach also constitutes a Chapter 93A violation, that violation also occurs at the place of installation. *Id.* at 579–582, 441 N.E.2d 1027. In *Bushkin Associates v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662 (1985), the Court held that a misrepresentation made by a person in Massachusetts to a person outside of Massachusetts did not occur primarily within Massachusetts. *Id.* at 637–639, 473 N.E.2d 662.

To the extent that these cases shed any light on the issue at hand, neither suggests that prosecution of out-of-state lawsuits against Massachusetts residents takes place within the Commonwealth. No more helpful

to plaintiff's cause is *Clinton Hosp. Ass'n v. Corson Group, Inc.,* 907 F.2d 1260 (1st Cir. 1990). *Clinton* involved an action by a Massachusetts hospital against a New York based physician recruitment firm. The hospital alleged that the firm had misrepresented the quality of the physicians it had recruited. Applying a three factor test, the Court concluded that the trial judge's finding that the deception had taken place primarily and substantially in Massachusetts was not clearly erroneous. *Id.* at 1264–1267.

The three factors examined by the *Clinton* court were 1) the location of the defendant at the time the deception occurred, 2) the location of the plaintiff when it received the deceptive statements, and 3) where the plaintiff suffered its loss. *Id.* at 1265–1266. The Court emphasized that even if the defendant was outside of Massachusetts when the misstatements were made, the statute looks to the location of both "actions and *transactions.*" Since a transaction involves both parties, the Court concluded that it occurs where both parties are located. *Id.* at 1266.

The reasoning of *Clinton* is inapplicable to the type of claim at issue here. Plaintiff's claim does not involve a transaction, but a series of actions associated with the prosecution of the Illinois lawsuits. The harm to the plaintiffs results not from anything injected into Massachusetts by defendants, but from ongoing activities taking place in Illinois. In *Clinton,* by contrast, the entire claimed wrongdoing of the defendants consisted of misrepresentations made into Massachusetts. In *Clinton* the court ultimately concluded that no one of its factors was determinative and that a "pragmatic, functional" approach was warranted.

■ In essence, AMS contends it is entitled to the benefit of Chapter 93A solely because it is a Massachusetts domiciliary. As the Massachusetts Appeals Court has noted, this reasoning would denude the "primarily and substantially" language of all meaning. *See Makino, U.S.A. v. Metlife Capital Credit,* 25 Mass.App.Ct. 302, 309–310, 518 N.E.2d 519 (1988). *See also Boston Hides & Furs, Ltd. v. Sumitomo Bank, Ltd.,* 870 F.Supp. 1153, 1166 (D.Mass.1994); *Sterling Suffolk Racecourse v. Burrillville Racing,*

802 F.Supp. 662, 672 (D.R.I.1992) *aff'd* 989 F.2d 1266 *cert. denied* 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993). Something more than a Massachusetts plaintiff is required to invoke the provisions of Chapter 93A, and that "something" is absent here. Accordingly, I find that there is no conceivable set of facts, reasonably consistent with the complaint, which would constitute violations of Chapter 93A taking place primarily and substantially in Massachusetts.

### 3. Dismissal of Count II (Abuse of Process)

Count II charges that the institution of the Illinois lawsuits against AMS and the former May employees constituted abuse of process, for which May is liable to AMS. May contends that Illinois law governs this count and that, under Illinois law, it fails to state a claim. AMS counters that Massachusetts law should apply, but that under the law of either state, its claim is sufficient to survive a motion to dismiss.

### a. The Sources of Law

■ A federal court sitting in diversity applies the choice of law principles of the forum state. *Klaxon v. Stentor Mfg. Co.,* 313 U.S. 487, 496–497, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941). "The usual first step in applying conflict of laws principles is to determine whether there is a conflict among the laws of the various states involved." *Lambert v. Kysar,* 983 F.2d 1110, 1114 (1st Cir.1993) (quoting *Cohen v. McDonnell Douglas Corp.,* 389 Mass. 327, 332, 450 N.E.2d 581 (1983)). When the controlling law in the two states is identical, the court need not pursue the choice of law analysis further. *Id.* at 1115.

■ Under Massachusetts law, a plaintiff stating a claim for abuse of process must allege that "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Jones v. Brockton Public Markets, Inc.,* 369 Mass. 387, 389, 340 N.E.2d 484 (1975). In Illinois, where the formulation is slightly different, a plaintiff must show "(1) existence of an ulterior motive or purpose, and (2) some act in the use of legal process not proper in the regular prosecution of the

proceedings." *Commerce Bank, N.A. v. Plotkin,* 255 Ill.App.3d 870, 194 Ill.Dec. 409, 411, 627 N.E.2d 746, 748 (1994). *See also Bonney v. King,* 201 Ill. 47, 66 N.E. 377, 378 (1903).

In Illinois, the courts emphasize that the process must be used for a purpose other than that for which it is intended, and that the mere filing of a lawsuit, even with a malicious motive, does not constitute abuse of process. *Commerce Bank,* 194 Ill.Dec. at 411, 627 N.E.2d at 748; *Bonney,* 66 N.E. at 378 ("[t]he action lies for the improper use of process after it has been issued, not for maliciously causing process to be issued."). In Illinois, "process" is construed narrowly to mean an official document issued by a court, by which a court obtains jurisdiction. *Commerce Bank,* 194 Ill.Dec. at 411, 627 N.E.2d at 748. Some appellate courts have suggested that to make out a claim for abuse of process, the plaintiff must have incurred more than the mere cost of defending against the action, and must "have suffered an actual arrest or seizure of his property." *Withall v. Capitol Federal Savings of America,* 155 Ill. App.3d 537, 108 Ill.Dec. 202, 207, 508 N.E.2d 363, 368 (1987).

In Massachusetts, by contrast, the concept of "process" appears somewhat broader, broad enough to include the mere institution of a civil action to achieve a collateral purpose other than winning the lawsuit. *See Silvia v. Building Inspector of West Bridgewater,* 35 Mass.App.Ct. 451, 453–454, 621 N.E.2d 686 (1993); *Powers v. Leno,* 24 Mass.App.Ct. 381, 383–384, 509 N.E.2d 46 (1987).

### b. *Choice of Law*

It thus appearing that Massachusetts and Illinois differ substantively in their concepts of "abuse of process", I now turn to the question of which state's law applies here. Like most states, Massachusetts formerly adhered to the doctrine of *lex loci delicti,* which held that the applicable law in tort cases was the law of the jurisdiction where the wrong-

ful conduct occurred. *See* Restatement of Conflict of Laws §§ 377–383 (1934).

Following a national trend away from single factor choice of law doctrine, Massachusetts has since abolished its former *per se* rule. *See Pevoski v. Pevoski,* 371 Mass. 358, 359–360, 358 N.E.2d 416 (1976). It now employs an eclectic choice-of-law approach which cannot be reduced to a single, named, doctrine. *Cosme v. Whitin Machine Works, Inc.,* 417 Mass. 643, 646, 632 N.E.2d 832 (1994). In matters of tort, Massachusetts courts still generally apply the substantive laws of the jurisdiction wherein the wrongful act occurred, but will also give weight to "various choice-influencing considerations ... including those provided in the Restatement (Second) of Conflict of Laws (1971) and those suggested by various commentators." *Id.*

Although Massachusetts courts have not specifically addressed the choice of law issue in an abuse of process case, the Restatement of Law suggests that Massachusetts' general tort choice of law rule (favoring the forum where the tort occurred) would apply. The Restatement provides that the "local law of the state where the proceeding complained of occurred" provides the substantive law of the case, "unless some other state has a more significant relationship under the [choice influencing] principles stated in § 6 [of the Restatement]." Restatement (Second) of Conflict of Laws § 155 (1971) (hereinafter "Restatement"). I conclude that Massachusetts courts would apply the law of Illinois in this case, unless it was shown that Massachusetts had a more significant relationship to the matter. *Accord Cosme,* 417 Mass. at 645–647, 632 N.E.2d 832 (adopting rule found in Restatement); *Cohen v. McDonnell Douglas Corp.,* 389 Mass. 327, 336–337, 450 N.E.2d 581 (1983) (same).

Applying the Restatement's choice influencing factors to the facts of this case, I conclude that Massachusetts does not have a more significant relationship to the case than does Illinois.[2] With respect to four of the

---

2. Restatement § 6 provides, in part:
   [T]he factors relevant to the choice of the applicable rule of law include (a) the needs of the

   interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the rela-

factors, the choice of Illinois law would seem superior. The basic policy underlying the tort of abuse of process is to prevent parties from invoking a state's coercive legal machinery for improper purposes. Since the proper use of a state's process is, by definition, determined by the law of the issuing state, it would be rather anomalous to apply the law of a sister state to determine whether the requirements of the issuing state's law have been satisfied.

Such a scenario would also conflict with the needs of the interstate system. Under *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny, states may obtain jurisdiction over out-of-state residents, so long as they have "minimum contacts" with the forum state. As a practical matter, this means that the process of one state is often served on persons located in other states. Were the law of those other states to govern abuse of process actions in such circumstances, plaintiffs seeking to serve process out-of-state would face the prospect that its service of process, valid under the laws of the issuing state, would be ruled invalid under the laws of the state where service was effected. This, it seems, would place a significant burden on the state jurisdictional framework set forth in *International Shoe*.

In the same theme, the interests of the forum state and of the various other states in this matter weigh heavily in favor of applying the law of the issuing state. While Massachusetts may have an interest in protecting its citizens against abuse of its process, it has no power to protect its citizens from legitimate application of the laws of other states. Conversely, Illinois has a paramount interest in seeing that its courts are able to exercise their jurisdiction to the full extent permitted by law, without second guessing by the courts of other states.[3]

Since the remaining factors do not weigh heavily in favor of either Massachusetts or Illinois, the balance remains in favor of Illinois.[4] I therefore conclude that Illinois law supplies the rule of decision for plaintiff's abuse of process claim. Since the mere filing of a meritless lawsuit is insufficient to state such a claim under Illinois law, defendants' motion to dismiss Count II is **ALLOWED**.

### B. *Stay of Proceedings*

The remaining issue before me is defendants' motion to stay these proceedings pending the outcome of the Illinois actions under the so-called *Colorado River* doctrine. *See Colorado River Conservation Dist. v. U.S.*, 424 U.S. 800, 813–821, 96 S.Ct. 1236, 1244–1249, 47 L.Ed.2d 483 (1976). Although federal courts generally have an "unflagging obligation" to exercise their jurisdiction, they may, for reasons of "wise judicial administration" decline such jurisdiction in "exceptional" cases. *Id.* at 817, 96 S.Ct. at 1246.

When state and federal courts both have jurisdiction over cases concerning the same matter, the federal court may abstain from exercising jurisdiction by dismissing the case or by staying proceedings. *Id.* at 817–819, 96 S.Ct. at 1246–1248; *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 27–28, 103 S.Ct. 927, 943–944, 74 L.Ed.2d 765 (1983). The factors to be considered by the federal court include: (1) whether a court has assumed jurisdiction over the *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls; and (6) whether the state forum is adequate to protect the rights of the parties. *Moses H. Cone*, 460 U.S. at 15–16, 23–27, 103 S.Ct. at 936–937, 941–943. In applying these factors, the court

---

tive interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

3. The balance of factors might be different in a case where the abuse of process claim was based

on an assertion that the state which issued the process lacked jurisdiction over the person pressing the abuse of process claim.

4. The remaining factors are "the protection of justified expectations", "certainty, predictability and uniformity of result", and "ease in the determination and application of the law to be applied."

must bear in mind that "[o]nly the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247.

██ Under the circumstances of this case, I find that a stay of proceedings is appropriate. The only factual allegations against May in this action are that the lawsuits brought against AMS and its employees in Illinois are frivolous, and intended solely as a form of harassment. By bringing this action here, AMS, in essence, is asking this court to rule on the validity of the Illinois actions before those actions have been fully litigated in Illinois. In the not unlikely event that the Illinois courts were to issue rulings on the merits during the pendency of this action, such rulings would likely have a dramatic impact on the outcome of the action in this court. This unusual circumstances creates a serious danger that, were this case to go forward, significant resources would be expended proving points which would soon be mooted by the Illinois courts.[5]

The Supreme Court has warned that *Colorado River* abstention is only appropriate "exceptional circumstances." I find that this is one of those cases. This is not a mere case of two courts exercising jurisdiction over the same claims. The Illinois actions were not only filed prior to this action, they are *logically* prior to this one as well. *Cf. Riddell Sports, Inc. v. Sport Supply Group, Inc.*, 1994 WL 86407 (S.D.N.Y.1994) (federal court would stay trademark infringement suit where claim was based on contractual right which was being litigated in state court forum). In light of the serious danger of piecemeal litigation, the paramount state interest in this action, the absence of any federal interest, the temporal priority of the Illinois actions, and the ability of the Illinois courts to adjudicate plaintiffs' claims, considerations of "wise judicial administration" weigh heavily in favor of granting the stay here. *See Liberty Mut. Ins. Co. v. Foremost–McKesson, Inc.*, 751 F.2d 475 (1st Cir. 1985).[6]

### ORDER

For the foregoing reasons, Motion by defendants George S. May and Donald J. Fletcher To Stay Count III and to Dismiss Counts I and II [docket entry 2] is **ALLOWED.**

**SO ORDERED.**

---

5. It is also of note that a resolution of this action would not necessarily be *res judicata* in the Illinois actions. Thus, if this action is not stayed, there is a serious danger that this action could proceed to judgment and the Illinois action would have to proceed nonetheless.

6. Plaintiff's rely heavily on the case of *Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46 (1st Cir.1995). *Elmendorf* was an action for breach of contract, false advertising and fraud by a Puerto Rican plaintiff against an Illinois defendant. The defendant had originally brought a breach of contract action against the plaintiff in Illinois state court, but that action had been dismissed for lack of personal jurisdiction. The plaintiff then brought the instant suit in Puerto Rico, and the defendant sought a stay under the *Colorado River* doctrine. The district court granted the stay, and the First Circuit reversed, holding that the district court abused its discretion.

*Elmendorf* does not control the instant case. In *Elmendorf*, all that remained of the Illinois action was an appeal from the Illinois court's dismissal on personal jurisdiction grounds. Nothing, however, logically barred the Puerto Rico action from continuing during the pendency of the Illinois appeal, and, as the court noted, the Puerto Rico court might be well into the merits of the case by the time the Illinois appeal was decided. The First Circuit concluded that there was no reason to prevent the Puerto Rico court from proceeding with the case since there were no factors weighing heavily against litigation in Puerto Rico.

By contrast, in this case, the Illinois litigation is not merely a parallel proceeding the outcome of which would determine the same issues as a trial here in Massachusetts. Rather, the Illinois proceedings are the factual predicates of the instant case, and how they are dealt with by the Illinois courts are an essential fact which must be considered by this Court in reaching the merits of this case.