USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1681

 THE GARSHMAN COMPANY LTD,
 Plaintiff, Appellee,

 v.

 GENERAL ELECTRIC COMPANY,
 Defendant, Appellant.

 ____________________

No. 98-1682

 THE GARSHMAN COMPANY LTD,
 Plaintiff, Appellant,

 v.

 GENERAL ELECTRIC COMPANY,
 Defendant, Appellee.

 ____________________

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nathaniel M. Gorton, U.S. District Judge]

 ____________________

 Before

 Boudin, Circuit Judge,

Magill, Senior Circuit Judge,

and Keeton, District Judge.

 _____________________

 Barbara Friedman Yaksic, with whom Benesch, Friedlander,
Coplan & Aronoff, was on brief, for General Electric Company. 
 Louis M. Ciavarra, with whom Kimberly A. Stone O'Brien and
Bowditch & Dewey, LLP were on brief, for The Garshman Company, Ltd.

 ____________________

 March 29, 1999
 ____________________ KEETON, District Judge. This appeal centers around a
contract dispute between The Garshman Company, Limited ("Garshman")
and the General Electric Company ("GE"). Garshman brought claims
against GE in the district court for breach of contract, estoppel,
quantum meruit, breach of the implied covenant of good faith and
fair dealing, and a violation of Mass. Gen. Laws ch. 93A (the only
non-jury claim). The jury found for Garshman on all claims before
it. Judge Gorton found for GE on the Mass. Gen. Laws ch. 93A
claim.
 On appeal, GE challenges the district court's refusal to
instruct the jury on the application of the Nevada Exclusive
Listing Statute. Garshman challenges both the court's denial of
its claim under Mass. Gen. Laws ch. 93A and the court's denial of
its post-trial Motion to Amend or Alter Judgment. We affirm the
district court in all respects.
 I. FACTS
 GE owned the Springer Mine located in Pershing County,
Nevada (the "Mine"). The Mine was formerly used to mine tungsten,
a substance used in light bulbs, but the Mine had not been
operational for many years. Garshman is a company that sells the
assets of its clients for a fee.
 In 1993, GE decided to sell-off the Mine's assets. After
negotiations between Garshman and GE, a written contract was signed
by which Garshman and a company called "GE Capital" (also known as
"Second Source") would become the exclusive agents for the sale of
the Mine's assets (the "Auction Agreement"). The Auction Agreement
provided that Garshman would receive a 12% commission upon the sale
of the assets. The Auction Agreement also provided for liquidated
damages in the event that GE violated the terms of the Auction
Agreement. Acting under the Auction Agreement, Garshman scheduled
an "absolute auction" for June 24, 1994.
 Soon after the Auction Agreement was signed, Sky
Scientific, Inc. ("Sky") approached Garshman about buying the
Mine's assets and some of the surrounding land before the scheduled
auction. Garshman relayed the offer to GE. GE and Garshman (as
the jury found) then orally agreed that GE would pay Garshman the
commission on the Sky transaction when Sky paid a non-refundable
deposit and signed a Letter of Intent.
 As a result of continuing negotiations, Sky eventually
signed a Letter of Intent and made a non-refundable deposit of
$75,000. Thereafter, GE directed Garshman to withdraw the assets
from the scheduled auction so they could be included in the sale to
Sky.
 Ultimately, the transaction between GE and Sky fell
through. No auction or sale of either the Mine or its assets ever
occurred. When Garshman and GE Capital requested payment by GE, GE
denied its obligation to pay the commission. This lawsuit ensued.
 II. THE DISTRICT COURT PROCEEDINGS
 After a four day trial, the jury made the following
findings:
 (1) GE withdrew the Mine's assets from the auction
without a waiver by Garshman;
 (2) It was unreasonable for GE to terminate the Auction
Agreement;
 (3) Under the terms of the oral contract, the minimum
required to trigger GE's obligation to pay Garshman its commission
was for Garshman to procure a buyer who paid a non-refundable
deposit and signed a Letter of Intent;
 (4) The events described in (3) as the minimum required
to trigger GE's obligation did occur, and the jury finding of
amount of damages to Garshman attributable to these events was
$372,000;
 (5) GE was estopped from denying its obligation to pay
Garshman a commission, and the value of Garshman's detrimental
reliance was $10,000;
 (6) Garshman was entitled to recover under quantum meruit
in the amount of $40,000;
 (7) GE committed a breach of its duty to act in good
faith and to deal fairly in its conduct toward Garshman; and
 (8) GE's breach of the implied covenant of good faith and
fair dealing caused damages to Garshman in the amount of $100,000.
See GE's Appendix at A-161.
 In a Memorandum and Order dated November 18, 1997, Judge
Gorton evaluated Garshman's claim under Mass. Gen. Laws ch. 93A. 
See A-188. Judge Gorton held that "[b]ecause all of GE's conduct
and much of Garshman's conduct occurred outside Massachusetts, ...
GE has met its burden of proving that its conduct did not occur
primarily and substantially in Massachusetts and thus, Garshman has
no claim under Chapter 93A." See A-190-92.
 On November 26, 1997, the Clerk at Judge Gorton's
direction entered judgment for the plaintiff in the amount of
$504,754.86 ($404,754.86 of liquidated damages and $100,000 for the
breach of the implied covenant of good faith and fair dealing) plus
pre-judgment interest in the amount of $135,039.21, for a total of
$639,794.07. See A-194. The judgment was to bear post-judgment
interest at the rate of 5.42% per annum. See id.
 Garshman filed a post-trial motion to amend or alter the
judgment to reflect the fact that the jury found breaches of two
contracts. See A-216. Garshman argued that it was owed both the
liquidated damages for breach of the Auction Agreement and an
additional $372,000 for breach of the oral contract. Garshman
further argued that the amount of damages awarded for estoppel and
quantum meruit should have been added to, rather than subsumed in,
the liquidated damages. See A-216-17. The district court denied
the motion, stating that a plaintiff cannot recover twice for the
same loss. See A-217.
 Both parties then filed motions for partial summary
judgment on the implied covenant claim. Garshman also filed a
motion to clarify the previous order. On April 29, 1998, Judge
Gorton declared moot both motions for partial summary judgment and
amended the judgment to reflect the fact that the jury awarded
Garshman $100,000 for GE's breach of the implied covenant of good
faith and fair dealing but, to avoid duplicative recovery, further
amended the judgment to preclude Garshman from collecting on that
claim beyond the amount of damages awarded for breach of the
Auction Agreement.
 III. THE APPEAL
 Three issues are before us on appeal: whether the trial
court properly refused to charge the jury on the Nevada Exclusive
Listing Statute; whether the trial court properly refused to allow
Garshman to recover damages for both the breach of the Auction
Agreement and the breach of the oral contract; and whether the
trial court improperly denied Garshman's claim under Mass. Gen.
Laws ch. 93A.
 A. The Nevada Exclusive Listing Statute
 The sole issue raised by GE on appeal is whether the
trial court erred in refusing to allow the jury to determine
whether Nevada's Exclusive Listing Statute (the "Statute") applied
to the disputed transactions. The Statute provides that:
 Every brokerage agreement which includes a
 provision for an exclusive listing must:
 1. Be in writing.
 2. Have set forth in its terms a definite,
 specified and complete termination.
 3. Contain no provision which requires the
 client who signs the brokerage agreement
 to notify the real estate broker of his
 intention to cancel the exclusive features
 of that listing after termination of the
 listing.
 4. Be signed by both the client or his
 authorized representative and the listing
 agent or his authorized representative in
 order to be enforceable.

N.R.S. 645.320.
 A brokerage agreement is an "exclusive listing" within
the meaning of 645.320 if it is (1) an agreement between an owner
and a broker, (2) for the sale of real property, (3) that excludes
other brokers. See Morrow v. Barger, 737 P.2d 1153, 1155, n.2
(Nev. 1987).
 It is clear to this court, and GE agrees, that the
Auction Agreement concerned the Mine's assets only, and not any
real estate. The Statute, then, does not apply to the Auction
Agreement. Although the oral agreement did involve the sale of
some real estate, the Statute does not apply to that transaction
either.
 GE's position is that because the Auction Agreement
contained a provision for exclusivity, the oral agreement between
GE, Garshman and Sky must also be interpreted as containing that
same provision. In support of this position, GE contends that the
oral agreement was, in essence, an oral modification of the Auction
Agreement and, thus, the exclusive listing provision in the Auction
Agreement must apply in full force to the Sky transaction. We
reject this contention.
 The Statute is not a declaration about oral brokerage
agreements generally. It applies only to those oral brokerage
agreements that "include a provision for an exclusive listing." 
The Statute does not say anything at all about an oral brokerage
agreement like the one in this case.
 The events of this case do not represent an ordinary
transaction. No exclusive listing provision was included in the
oral agreement. Also, the evidence does not support a
determination that the terms of the Auction Agreement were
incorporated into the oral agreement. The Statute is, therefore,
irrelevant to this case. For this reason, GE's complaints on
appeal that the trial court failed to instruct the jury on the
Exclusive Listing Statute is without merit, quite apart from
grounds of procedural preclusion raised by Garshman. The trial
court has no duty to instruct the jury on matters of law that are
irrelevant to the special questions they are directed to answer in
a verdict answering special questions only.
 B. Duplicative Damages
 Garshman argues that the trial court erred in entering
judgment only in the amount of the liquidated damages recoverable
for breach of the Auction Agreement, plus interest. Garshman
contends that it is entitled to recover both the liquidated damages
and the damages for breach of the oral agreement found by the jury. 
 The jury found that GE violated the Auction Agreement by
withdrawing the assets from the auction. The jury further found
that GE violated the oral agreement by failing to pay Garshman its
commission after Sky signed a Letter of Intent and placed a
deposit. Garshman argues that the proper result of these jury
findings is to award Garshman both the $404,754.86 of liquidated
damages and the $372,000 awarded by the jury. This argument is
without merit.
 It is well-settled that damages for breach of contract
should place the wronged party in as good a position as it would
have been in had the other party fully performed its obligation. 
See Hornwood v. Smith's Food King, No. 1, 807 P.2d 208, 211 (Nev.
1991). A plaintiff is not entitled to duplicative damages; it may
recover only the amount of damages it actually suffered. SeeBergstrom v. Estate of DeVoe, 854 P.2d 860, 862 (Nev. 1993).
 In this case, the verdict form was not precise enough to
allow the jury to consider the possibility of duplicative damages. 
In these circumstances, no party having objected to this lack of
precision, the trial court had the authority to resolve the dispute
that emerged after verdict over whether the damages findings were
in part duplicative.
 In resolving this dispute on the record available to the
district judge (which we assume, absent any showing to the
contrary, was no more lucid on this point than the record before us
on appeal), the district judge could appropriately consider the way
in which the parties might have arrived at the liquidated damages
figure of $404,754.86. That analysis might have a bearing on
whether part or all of the harm suffered from breach of the oral
agreement was also part or all of the harm suffered from breach of
the Auction Agreement. It happens that adding together (1) a
commission of 12% on an assumed sale price of $3,100,000, which is
$372,000, and (2) expenses of $32,754.86, produces a total of
$404,754.86. Thus, Judge Gorton might reasonably have inferred
that loss of a commission of $372,000 was an element of the
liquidated damages for breach of the Auction Agreement and also was
an element of the damages for breach of the oral agreement, as the
jury found.
 Garshman contends that it is nevertheless entitled to
both commissions because each was separately earned. We conclude,
however, that Garshman has not provided a record that demonstrates
as a matter of law that its contention is correct. Nor has
Garshman provided a record that shows that it asked for submission
of this precise question to the jury, accompanied by a proffer of
sufficient evidence at trial to support a finding in its favor. 
The trial court noted that Garshman pled breach of the Auction
Agreement and breach of the oral agreement as alternative theories
of recovery, and ruled: "[m]erely because ... the jury found
damages under both theories does not entitle [Garshman] to recover
under more than one theory." See A-216-17. 
 Given all these circumstances bearing on the issue of
duplication, we conclude that the trial court acted well within the
scope of its discretion in determining that Garshman should not
receive more than the liquidated damages in the circumstances of
this case.
 C. Mass. Gen. Laws ch. 93A
 Garshman appeals the trial court's decision to deny its
claim under Mass. Gen. Laws ch. 93A. The trial court's decision
was two-fold. First, the trial court determined that the conduct
relevant to this case did not occur "primarily and substantially"
within Massachusetts. See A-192. Second, the court determined
that even if the conduct did occur primarily and substantially
within Massachusetts, it did not rise to the level of a violation
of Chapter 93A. See id. We do not address the second issue
because we affirm the trial court's decision on the first ground,
without reaching the second ground.
 GE has the burden of showing that its relevant conduct
occurred primarily and substantially outside Massachusetts. Mass.
Gen. Laws ch. 93A 11. The trial court's determination that GE
satisfied that burden was a mixed legal-factual determination. The
trial court's findings of historical facts are reviewed for clear
error. The legal elements that govern the relevancy of those
factual premises are reviewed de novo. See Play Time v. LDDS
Metromedia Communications, Inc., 123 F.3d 23, 32 (1st Cir. 1997);
Roche v. Royal Bank of Canada, 109 F.3d 820, 829 (1st Cir. 1997);
and Clinton Hospital Ass'n v. The Corson Group, Inc., 907 F.2d
1260, 1264 (1st Cir. 1990).
 We have often stated that three basic factors must be
weighed in determining whether conduct occurs primarily and
substantially in Massachusetts. See, e.g., id. First, the court
considers where the defendant committed the deception. Second, the
court considers where the plaintiff was deceived and acted upon the
deception. Third, the court considers the situs of plaintiff's
losses due to the deception. See Clinton Hospital Ass'n, 907 F.2d
at 1265-66. The trial court properly followed this approach in
making its determination that the conduct occurred primarily and
substantially outside of Massachusetts. See A-191.
 Considering the first factor, the trial court found that
"all of GE's conduct took place in either Ohio or Nevada." See id. 
None of GE's employees or officers ever came to Massachusetts in
connection with the disputed transactions. Although we have held
that this is the least weighty of the factors, it is still relevant
when weighing all factors together in the balance to make a
reasoned decision.
 Following precedent, the trial court analyzed the second
factor by making two distinct inquiries: where did plaintiff
receive the deception and where did plaintiff act upon the
deception. The trial court found that Garshman learned of GE's
refusal to pay the commission while in Massachusetts. Most of
Garshman's relevant conduct, however, occurred in Nevada. Garshman
inspected the Mine in Nevada, and Garshman employees created a
video of the property and did the physical preparation for the
auction in Nevada. Although this second factor weighs in part in
favor of Garshman and in part in favor of GE, the conduct actively
taken by Garshman outside of Massachusetts in furtherance of the
transactions outweighs the mere fact that Garshman learned, while
in Massachusetts, that GE would not pay its commission. Therefore,
this factor, taken as a whole, weighs in favor of GE.
 The third factor to be considered is the location of the
loss. The trial court determined that Garshman's loss occurred in
Massachusetts. The trial court correctly recognized, however, that
the place of injury is not determinative; otherwise in almost every
case with a Massachusetts plaintiff the defendant would be subject
to Chapter 93A violations, regardless of how negligible the
defendant's activity in Massachusetts was. See id. The fact that
Garshman incurred the loss in Massachusetts is not determinative in
this case.
 The trial court weighed these factors explicitly and
determined that because all of GE's conduct and much of Garshman's
conduct occurred outside of Massachusetts, GE met its burden of
proving that its conduct did not occur primarily and substantially
within Massachusetts. We review a trial court's weighing of
factors and evaluative inferences drawn from historical facts for
abuse of discretion.
 Although it is not insignificant that Garshman learned of
the loss and incurred the loss in Massachusetts, Garshman did
conduct a substantial amount of business outside of Massachusetts,
and GE conducted all of its business outside of Massachusetts. 
These facts weigh heavily in favor of the defendant. The trial
court was well within its discretion in determining that defendant
met its burden of proving that its conduct occurred primarily and
substantially outside of Massachusetts.
 Affirmed.