The GARSHMAN COMPANY,
LTD., Plaintiff, Appellee,

v.

GENERAL ELECTRIC COMPANY,
Defendant, Appellant.

The Garshman Company Ltd,
Plaintiff, Appellant,

v.

General Electric Company,
Defendant, Appellee.

Nos. 98–1681, 98–1682.

United States Court of Appeals,
First Circuit.

Heard March 4, 1999.
Decided March 29, 1999.

2

Barbara Friedman Yaksic, with whom Benesch, Friedlander, Coplan & Aronoff, was on brief, for General Electric Company.

Louis M. Ciavarra, with whom Kimberly A. Stone, O'Brien and Bowditch & Dewey, LLP were on brief, for The Garshman Company, Ltd.

Before BOUDIN, Circuit Judge, MAGILL,* Senior Circuit Judge, and

* Of the Eighth Circuit, sitting by designation.

KEETON,** District Judge.

KEETON, District Judge.

This appeal centers around a contract dispute between The Garshman Company, Limited ("Garshman") and the General Electric Company ("GE"). Garshman brought claims against GE in the district court for breach of contract, estoppel, quantum meruit, breach of the implied covenant of good faith and fair dealing, and a violation of Mass. Gen. Laws ch. 93A (the only non-jury claim). The jury found for Garshman on all claims before it. Judge Gorton found for GE on the Mass. Gen. Laws ch. 93A claim.

On appeal, GE challenges the district court's refusal to instruct the jury on the application of the Nevada Exclusive Listing Statute. Garshman challenges both the court's denial of its claim under Mass. Gen. Laws ch. 93A and the court's denial of its post-trial Motion to Amend or Alter Judgment. We affirm the district court in all respects.

## I. FACTS

GE owned the Springer Mine located in Pershing County, Nevada (the "Mine"). The Mine was formerly used to mine tungsten, a substance used in light bulbs, but the Mine had not been operational for many years. Garshman is a company that sells the assets of its clients for a fee.

In 1993, GE decided to sell-off the Mine's assets. After negotiations between Garshman and GE, a written contract was signed by which Garshman and a company called "GE Capital" (also known as "Second Source") would become the exclusive agents for the sale of the Mine's assets (the "Auction Agreement"). The Auction Agreement provided that Garshman would receive a 12% commission upon the sale of the assets. The Auction Agreement also provided for liquidated damages in the event that GE violated the terms of the Auction Agreement. Acting under the

Auction Agreement, Garshman scheduled an "absolute auction" for June 24, 1994.

Soon after the Auction Agreement was signed, Sky Scientific, Inc. ("Sky") approached Garshman about buying the Mine's assets and some of the surrounding land before the scheduled auction. Garshman relayed the offer to GE. GE and Garshman (as the jury found) then orally agreed that GE would pay Garshman the commission on the Sky transaction when Sky paid a non-refundable deposit and signed a Letter of Intent.

As a result of continuing negotiations, Sky eventually signed a Letter of Intent and made a non-refundable deposit of $75,-000. Thereafter, GE directed Garshman to withdraw the assets from the scheduled auction so they could be included in the sale to Sky.

Ultimately, the transaction between GE and Sky fell through. No auction or sale of either the Mine or its assets ever occurred. When Garshman and GE Capital requested payment by GE, GE denied its obligation to pay the commission. This lawsuit ensued.

## II. THE DISTRICT COURT PROCEEDINGS

After a four day trial, the jury made the following findings:

(1) GE withdrew the Mine's assets from the auction without a waiver by Garshman;

(2) It was unreasonable for GE to terminate the Auction Agreement;

(3) Under the terms of the oral contract, the minimum required to trigger GE's obligation to pay Garshman its commission was for Garshman to procure a buyer who paid a non-refundable deposit and signed a Letter of Intent;

(4) The events described in (3) as the minimum required to trigger GE's obligation did occur, and the jury finding of

** Of the District of Massachusetts, sitting by    designation.

amount of damages to Garshman attributable to these events was $372,000;

(5) GE was estopped from denying its obligation to pay Garshman a commission, and the value of Garshman's detrimental reliance was $10,000; ·

(6) Garshman was entitled to recover under quantum meruit in the amount of $40,000;

(7) GE committed a breach of its duty to act in good faith and to deal fairly in its conduct toward Garshman; and

(8) GE's breach of the implied covenant of good faith and fair dealing caused damages to Garshman in the amount of $100,000.

*See GE's Appendix* at A–161.

In a Memorandum and Order dated November 18, 1997, Judge Gorton evaluated Garshman's claim under Mass. Gen. Laws ch. 93A. *See* A–188. Judge Gorton held that "[b]ecause all of GE's conduct and much of Garshman's conduct occurred outside Massachusetts, ... GE has met its burden of proving that its conduct did not occur primarily and substantially in Massachusetts and thus, Garshman has no claim under Chapter 93A." *See* A–190–92.

On November 26, 1997, the Clerk at Judge Gorton's direction entered judgment for the plaintiff in the amount of $504,-754.86 ($404,754.86 of liquidated damages and $100,000 for the breach of the implied covenant of good faith and fair dealing) plus pre-judgment interest in the amount of $135,039.21, for a total of $639,794.07. *See* A–194. The judgment was to bear post-judgment interest at the rate of 5.42% per annum. *See id.*

Garshman filed a post-trial motion to amend or alter the judgment to reflect the fact that the jury found breaches of two contracts. *See* A–216. Garshman argued that it was owed both the liquidated damages for breach of the Auction Agreement *and* an additional $372,000 for breach of the oral contract. Garshman further argued that the amount of damages awarded for estoppel and quantum meruit should

have been added to, rather than subsumed in, the liquidated damages. *See* A–216–17. The district court denied the motion, stating that a plaintiff cannot recover twice for the same loss. *See* A–217.

Both parties then filed motions for partial summary judgment on the implied covenant claim. Garshman also filed a motion to clarify the previous order. On April 29, 1998, Judge Gorton declared moot both motions for partial summary judgment and amended the judgment to reflect the fact that the jury awarded Garshman $100,000 for GE's breach of the implied covenant of good faith and fair dealing but, to avoid duplicative recovery, further amended the judgment to preclude Garshman from collecting on that claim beyond the amount of damages awarded for breach of the Auction Agreement.

## III.  THE APPEAL

Three issues are before us on appeal: whether the trial court properly refused to charge the jury on the Nevada Exclusive Listing Statute; whether the trial court properly refused to allow Garshman to recover damages for both the breach of the Auction Agreement ˙and the breach of the oral contract; and whether the trial court improperly denied Garshman's claim under Mass. Gen. Laws ch. 93A.

### A.  The Nevada˙ Exclusive Listing Statute

◼ The sole issue raised by GE on appeal is whether the trial court erred in refusing to allow the jury to determine whether Nevada's Exclusive Listing Statute (the "Statute") applied to the disputed transactions. The Statute provides that:

Every brokerage agreement which includes a provision for an exclusive listing must:

1.  Be in writing.

2.  Have set forth in its terms a definite, specified and complete termination.

3. Contain no provision which requires the client who signs the brokerage agreement to notify the real estate broker of his intention to cancel the exclusive features of that listing after termination of the listing.

4. Be signed by both the client or his authorized representative and the listing agent or his authorized representative in order to be enforceable.

N.R.S. 645.320.

■ A brokerage agreement is an "exclusive listing" within the meaning of 645.320 if it is (1) an agreement between an owner and a broker, (2) for the sale of real property, (3) that excludes other brokers. *See Morrow v. Barger*, 103 Nev. 247, 737 P.2d 1153, 1155, n. 2 (Nev.1987).

It is clear to this court, and GE agrees, that the Auction Agreement concerned the Mine's assets only, and not any real estate. The Statute, then, does not apply to the Auction Agreement. Although the oral agreement did involve the sale of some real estate, the Statute does not apply to that transaction either.

■ GE's position is that because the Auction Agreement contained a provision for exclusivity, the oral agreement between GE, Garshman and Sky must also be interpreted as containing that same provision. In support of this position, GE contends that the oral agreement was, in essence, an oral modification of the Auction Agreement and, thus, the exclusive listing provision in the Auction Agreement must apply in full force to the Sky transaction. We reject this contention.

The Statute is not a declaration about oral brokerage agreements generally. It applies only to those oral brokerage agreements that "include a provision for an exclusive listing." The Statute does not say anything at all about an oral brokerage agreement like the one in this case.

■ The events of this case do not represent an ordinary transaction. No exclusive listing provision was included in the oral agreement. Also, the evidence does not support a determination that the terms of the Auction Agreement were incorporated into the oral agreement. The Statute is, therefore, irrelevant to this case. For this reason, GE's complaint on appeal that the trial court failed to instruct the jury on the Exclusive Listing Statute is without merit, quite apart from grounds of procedural preclusion raised by Garshman. The trial court has no duty to instruct the jury on matters of law that are irrelevant to the special questions they are directed to answer in a verdict answering special questions only.

**B. Duplicative Damages**

Garshman argues that the trial court erred in entering judgment only in the amount of the liquidated damages recoverable for breach of the Auction Agreement, plus interest. Garshman contends that it is entitled to recover both the liquidated damages *and* the damages for breach of the oral agreement found by the jury. The jury found that GE violated the Auction Agreement by withdrawing the assets from the auction. The jury further found that GE violated the oral agreement by failing to pay Garshman its commission after Sky signed a Letter of Intent and placed a deposit. Garshman argues that the proper result of these jury findings is to award Garshman both the $404,754.86 of liquidated damages and the $372,000 awarded by the jury. This argument is without merit.

■ It is well-settled that damages for breach of contract should place the wronged party in as good a position as it would have been in had the other party fully performed its obligation. *See Hornwood v. Smith's Food King, No. 1*, 107 Nev. 80, 807 P.2d 208, 211 (Nev.1991). A plaintiff is not entitled to duplicative damages; it may recover only the amount of damages it actually suffered. *See Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 854 P.2d 860, 862 (Nev.1993).

■ In this case, the verdict form was not precise enough to allow the jury to consider the possibility of duplicative damages. In these circumstances, no party having objected to this lack of precision, the trial court had the authority to resolve the dispute that emerged after verdict over whether the damages findings were in part duplicative.

■ In resolving this dispute on the record available to the district judge (which we assume, absent any showing to the contrary, was no more lucid on this point than the record before us on appeal), the district judge could appropriately consider the way in which the parties might have arrived at the liquidated damages figure of $404,754.86. That analysis might have a bearing on whether part or all of the harm suffered from breach of the oral agreement was also part or all of the harm suffered from breach of the Auction Agreement. It happens that adding together (1) a commission of 12% on an assumed sale price of $3,100,000, which is $372,000, and (2) expenses of $32,754.86, produces a total of $404,754.86. Thus, Judge Gorton might reasonably have inferred that loss of a commission of $372,000 was an element of the liquidated damages for breach of the Auction Agreement and also was an element of the damages for breach of the oral agreement, as the jury found.

Garshman contends that it is nevertheless entitled to both commissions because each was separately earned. We conclude, however, that Garshman has not provided a record that demonstrates as a matter of law that its contention is correct. Nor has Garshman provided a record that shows that it asked for submission of this precise question to the jury, accompanied by a proffer of sufficient evidence at trial to support a finding in its favor. The trial court noted that Garshman pled breach of the Auction Agreement and breach of the oral agreement as alternative theories of recovery, and ruled: "[m]erely because . . . the jury found damages under both

theories does not entitle [Garshman] to recover under more than one theory." *See* A–216–17.

Given all these circumstances bearing on the issue of duplication, we conclude that the trial court acted well within the scope of its discretion in determining that Garshman should not receive more than the liquidated damages in the circumstances of this case.

## C. Mass. Gen. Laws ch. 93A

■ Garshman appeals the trial court's decision to deny its claim under Mass. Gen. Laws ch. 93A. The trial court's decision was two-fold. First, the trial court determined that the conduct relevant to this case did not occur "primarily and substantially" within Massachusetts. *See* A–192. Second, the court determined that even if the conduct did occur primarily and substantially within Massachusetts, it did not rise to the level of a violation of Chapter 93A. *See id.* We do not address the second issue because we affirm the trial court's decision on the first ground, without reaching the second ground.

■ GE has the burden of showing that its relevant conduct occurred primarily and substantially outside Massachusetts. Mass. Gen. Laws ch. 93A § 11. The trial court's determination that GE satisfied that burden was a mixed legal-factual determination. The trial court's findings of historical facts are reviewed for clear error. The legal elements that govern the relevancy of those factual premises are reviewed de novo. *See Play Time v. LDDS Metromedia Communications, Inc.,* 123 F.3d 23, 32 (1st Cir.1997); *Roche v. Royal Bank of Canada,* 109 F.3d 820, 829 (1st Cir.1997); and *Clinton Hospital Ass'n v. The Corson Group, Inc.,* 907 F.2d 1260, 1264 (1st Cir.1990).

■ We have often stated that three basic factors must be weighed in determining whether conduct occurs primarily and substantially in Massachusetts. *See, e.g., id.* First, the court considers where the

defendant committed the deception. Second, the court considers where the plaintiff was deceived and acted upon the deception. Third, the court considers the situs of plaintiff's losses due to the deception. *See Clinton Hospital Ass'n,* 907 F.2d at 1265–66. The trial court properly followed this approach in making its determination that the conduct occurred primarily and substantially outside of Massachusetts. *See* A–191.

Considering the first factor, the trial court found that "all of GE's conduct took place in either Ohio or Nevada." *See id.* None of GE's employees or officers ever came to Massachusetts in connection with the disputed transactions. Although we have held that this is the least weighty of the factors, it is still relevant when weighing all factors together in the balance to make a reasoned decision.

Following precedent, the trial court analyzed the second factor by making two distinct inquiries: where did plaintiff receive the deception and where did plaintiff act upon the deception. The trial court found that Garshman learned of GE's refusal to pay the commission while in Massachusetts. Most of Garshman's relevant conduct, however, occurred in Nevada. Garshman inspected the Mine in Nevada, and Garshman employees created a video of the property and did the physical preparation for the auction in Nevada. Although this second factor weighs in part in favor of Garshman and in part in favor of GE, the conduct actively taken by Garshman outside of Massachusetts in furtherance of the transactions outweighs the mere fact that Garshman learned, while in Massachusetts, that GE would not pay its commission. Therefore, this factor, taken as a whole, weighs in favor of GE.

The third factor to be considered is the location of the loss. The trial court determined that Garshman's loss occurred in Massachusetts. The trial court correctly recognized, however, that the place of injury is not determinative; otherwise in almost every case with a Massachusetts plaintiff the defendant would be subject to Chapter 93A violations, regardless of how negligible the defendant's activity in Massachusetts was. *See id.* The fact that Garshman incurred the loss in Massachusetts is not determinative in this case.

The trial court weighed these factors explicitly and determined that because all of GE's conduct and much of Garshman's conduct occurred outside of Massachusetts, GE met its burden of proving that its conduct did not occur primarily and substantially within Massachusetts. We review a trial court's weighing of factors and evaluative inferences drawn from historical facts for abuse of discretion.

Although it is not insignificant that Garshman learned of the loss and incurred the loss in Massachusetts, Garshman did conduct a substantial amount of business outside of Massachusetts, and GE conducted all of its business outside of Massachusetts. These facts weigh heavily in favor of the defendant. The trial court was well within its discretion in determining that defendant met its burden of proving that its conduct occurred primarily and substantially outside of Massachusetts.

*Affirmed.*