U.S.C.O.C. v. Dunbarton                    04-CV-304-JD  04/20/05

UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


U.S.C.O.C. of New Hampshire
RSA #2, d/b/a US Cellular

     v.                               Civil No. 04-cv-304-JD
                                      Opinion No. 2005 DNH 066
Town of Dunbarton, New Hampshire


                            O R D E R


     The Dunbarton Zoning Board of Adjustment ("ZBA") denied US

Cellular's application for a variance to build a 180-foot

communication antenna tower on a parcel of land in the town but

granted a variance for a tower of 110 feet with ten conditions.

US Cellular brings this action against Dunbarton under the

Telecommunications Act of 1996 and New Hampshire Revised Statutes

Annotated ("RSA") § 674:21, seeking to require the town to grant

the permits necessary for it to build a 150-foot communication

tower.  US Cellular moves for summary judgment on the ground that

the ZBA's decision is not supported by substantial evidence as

required by 42 U.S.C. § 332(c)(7)(B)(iii) and violates state law.


                           Background

     In June of 2003, US Cellular applied to the ZBA for a

variance to build a 180-foot lattice-style communication antenna

tower on land in Dunbarton owned by Richard and Nicolette Hecker.

A variance was required because the town's zoning ordinance did not provide for such towers and limited structures to thirty-five feet in height. US Cellular asserted that it had significant coverage gaps in its personal wireless service throughout Dunbarton so that its customers who lived, worked, or traveled there were unable to reliably use their wireless telephones.

The ZBA held six hearings on the application between July of 2003 and January of 2004. In the course of the hearings, US Cellular explained that its primary goal was to close the coverage gap along Route 13, including coverage inside residences, and that more generally its coverage goal was to permit its customers to use wireless telephones as their only telephones. US Cellular asserted that a tower at the proposed location at a minimum of 150 feet was necessary to provide adequate coverage. It offered to disguise a tower of that height as a tree and to allow town emergency services to use available space on the tower, free of charge.

US Cellular submitted an engineering report in support of the application. The report stated that the proposed antenna tower, at a minimum height of 150 feet, would allow US Cellular to provide coverage in the targeted areas in Dunbarton based on signal strength of -92dBm. The report provided information about coverage from towers at higher and lower heights.

2

The town retained Mark Hutchins, a radiofrequency engineer, to prepare an independent engineering report. In his initial report, dated December 3, 2003, Hutchins concluded that US Cellular had shown inadequate coverage along most of Route 13 that constituted a significant gap in coverage based on the traffic count on that road. Hutchins found that no other site for an antenna was a viable alternative, that roaming was not a viable alternative, that 110 feet was the minimum height for an antenna to avoid interference from foliage, but that 155 feet was the minimum necessary in this case to allow other providers to locate on the antenna.

On January 20, 2004, the ZBA voted to approve the variance but for a tower of 110 feet and with ten conditions. The conditions included that US Cellular would allow town safety services to use available space on the tower without paying rent and that the tower would look like a "natural tree." US Cellular moved for rehearing on their application, seeking to provide additional evidence to address the issues of the height of the tower necessary for coverage and to have the town's expert, Mark Hutchins, be available to explain and interpret the information and address any questions.

The ZBA granted US Cellular's motion for rehearing on March 8, 2004. In making the decision to allow a rehearing, the ZBA

agreed with US Cellular that the evidence already presented showed a significant gap in coverage, along several miles of Route 13 and many other parts of the town where its residents live and work, which totaled sixty-five percent of the town. US Cellular submitted a supplemental engineering report in which it explained that it was requesting a tower of 150 feet to provide both in-building and in-vehicle coverage throughout Dunbarton. The supplemental report explained that the minimum signal strength for in-building coverage was -82dBm and -87dBm for in-vehicle coverage. The report further stated that a tower of 110 feet would not provide adequate coverage.

Mark Hutchins, the town's radiofrequency engineer, also submitted a supplemental report. In the report, Hutchins explained that US Cellular's original coverage maps were not based on a minimum signal strength necessary for coverage and did not address an antenna at 110 feet. Hutchins agreed with US Cellular that it needed a minimum antenna tower height of 150 feet to provide adequate service.

The ZBA issued its decision after rehearing on July 12, 2004. The ZBA affirmed its first decision to grant a variance for only a 110-foot antenna tower with ten conditions, based upon Mark Hutchins's first report, dated December 3, 2003, and its assessment of the evidence presented to the board. The ZBA noted

4

that US Cellular had presented new information for rehearing that addressed coverage gaps other than along Route 13 and focused on in-home services and that in his second report, Hutchins concluded that a tower of 150 feet was necessary to close the identified coverage gaps. The ZBA rejected Hutchins's second report on the ground that it addressed coverage gaps that were not included in US Cellular's application and based on town counsel's advice that the TCA does not require in-home service.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

5

US Cellular moves for summary judgment on the ground that the record lacks substantial evidence to support the ZBA's decision, as required by the TCA, 47 U.S.C. § 332(c)(7)(B)(iii), and that the conditions imposed by the ZBA violate RSA 674:21. US Cellular seeks immediate injunctive relief directing the ZBA to grant a variance to allow the proposed 150-foot antenna tower. Dunbarton objects to summary judgment and to injunctive relief.

A.  Telecommunications Act Claim

The Supreme Court recently explained the operation of the Telecommunications Act of 1996:

> Congress enacted the Telecommunications Act of 1996 (TCA), 110 Stat. 56, to promote competition and higher quality in American telecommunications services and to "encourage the rapid deployment of new telecommunications technologies." Ibid. One of the means by which it sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers. To this end, the TCA amended the Communications Act of 1934, 48 Stat. 1064, to include § 332(c)(7), which imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities, 110 Stat. 151, codified at 47 U.S.C. § 332(c)(7). Under this provision, local governments may not "unreasonably discriminate among providers of functionally equivalent services," § 332(c)(7)(B)(i)(I), take actions that "prohibit or have the effect of prohibiting the provision of personal wireless services," § 332(c)(7)(B)(i)(II), or limit the placement of wireless

> facilities "on the basis of the environmental effects of radio frequency emissions," § 332(c)(7)(B)(iv). They must act on requests for authorization to locate wireless facilities "within a reasonable period of time," § 332(c)(7)(B)(ii), and each decision denying such a request must "be in writing and supported by substantial evidence contained in a written record," § 332(c)(7)(B)(iii).

City of Rancho Palos Verdes, Cal. v. Abrams, 125 S. Ct. 1453, 1455-56 (2005).

In this case, US Cellular challenges the ZBA's decision, limiting the antenna tower to 110 feet, on the ground that it was not supported by substantial evidence in the record. To comply with the TCA, a local board must issue a written decision, which is separate from the record of its proceedings, and the decision must be supported by substantial evidence contained within a written record of the pertinent proceedings. Southwestern Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 59-60 (1st Cir. 2001). "If a board decision is not supported by substantial evidence . . . then under the Supremacy Clause of the Constitution, local law is pre-empted in order to effectuate the TCA's national policy goals." Second Generation Props., L.P. v. Town of Pelham, 313 F.3d 620, 627 (1st Cir. 2002).

Judicial review for substantial evidence is narrow and deferential. Southwestern Bell, 244 F.3d at 58-9. "Substantial evidence does not mean a large or considerable amount of

7

evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.  The Board's decision will thus withstand our scrutiny if it is supported by . . . more than a scintilla of evidence."  ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94-5 (1st Cir. 2002) (internal quotation marks and citations omitted).  "Thus, if the issue is simply one of whether the board's decision is supported by substantial evidence, the courts defer to the decision of the local authority, provided that the local board picks between reasonable inferences from the record before it."  Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 22-3 (1st Cir. 2002).  The applicant bears the burden of showing that substantial evidence is lacking to support the board's decision. Southwestern Bell, 244 F.3d at 63; accord U.S. Cellular Corp. v. City of Wichita Falls, 364 F.3d 250, 256 (5th Cir. 2004).

The pertinent decision for review, in this case, is the ZBA's written decision issued on July 12, 2004, following its rehearing of US Cellular's modified application for a variance to build a 150-foot antenna tower.[1]  In that decision, the ZBA

_____

[1]The ZBA's initial decision is recorded in the minutes of its meeting held on January 20, 2004, when the ZBA voted to conditionally approve US Cellular's application but only for a tower of 110-feet and with ten conditions.  No reasons are provided for limiting the height to 110 feet or for imposing the conditions.  The ZBA does not appear to have issued a written decision on its first vote.

8

acknowledged that it permitted US Cellular to submit new information in support of its application and that its expert, Mark F. Hutchins, reviewed that information and issued a new report. The ZBA also acknowledged that Hutchins found a 150-foot tower was necessary to close gaps in coverage beyond the Route 13 area and for in-building service. Nevertheless, the ZBA rejected Hutchins's report and the new evidence as irrelevant on the ground that they addressed coverage gaps beyond those raised in US Cellular's original application and because town counsel had advised them that the TCA did not require in-building service. The ZBA concluded that a 110-foot tower would be adequate. The ZBA also reaffirmed the ten conditions it originally imposed on granting the variance for a 110-foot antenna tower.

The ZBA is correct that US Cellular provided new information to support its application as part of the rehearing process. It is also true that US Cellular increased the signal strength it asserted was necessary to provide adequate coverage. However, the ZBA permitted US Cellular to supplement its application process with new information and accepted that information for consideration by its expert, Mark Hutchins. Therefore, the ZBA's decision to reject Hutchins's report as irrelevant on the ground that he considered new information does not square with the record.

9

In addition, contrary to the ZBA's decision, US Cellular sought both in-building and in-vehicle service coverage for its customers in Dunbarton in the original application. The application also addressed coverage in areas beyond the Route 13 corridor. See Application, Ex. B, ¶¶ 4, 16; Minutes, Ex. G at 3; Engineering Document, Ex. Q. In fact, as part of the rehearing process, the ZBA agreed with US Cellular that its original application sought coverage for service in addition to in-vehicle service along Route 13. Therefore, neither the issue of in-building coverage nor the scope of the asserted gaps in coverage was entirely new, although the focus may have shifted from the Route 13 area to include more emphasis on other areas of the town, which evidence was heard by the ZBA during the rehearing process. As such, the record does not support the ZBA's reasoning.

The ZBA's conclusion that a lack of wireless service in homes need not be considered in determining whether a significant gap in service exists was purportedly based on an interpretation of the TCA by town counsel. As such, the ZBA's reliance on that interpretation is not a finding of fact that would require support from substantial evidence in the record under § 332(c)(7)(iii), but instead is a legal ruling, raising a question of statutory interpretation, which is generally reviewed under a

10

de novo standard. See, e.g., Rational Software Corp. v. Sterling Corp., 393 F.3d 276, 276 (1st Cir. 2005) (pure questions of law such as statutory interpretation reviewed de novo); Cabelvision of Boston v. Pub. Improvement Comm'n, 184 F.3d 88, 96, 104 (1st Cir. 1999) (interpreting different section of TCA de novo); Nextel Comm'ns v. Town of Hanson, 311 F. Supp. 2d 142, 167 (D. Mass. 2004) (noting difference between review of legal issue and review for substantial evidence); Global Naps, Inc. v. N.E. Tel. & Tel. Co., 156 F. Supp. 2d 72, 77 (D. Mass. 2001) (noting de novo review of different section of TCA and inapplicability of Chevron deference). Therefore, the court reviews the ZBA's interpretation of the TCA de novo.

The TCA does not specifically address the issues of service inside of buildings or whether a significant gap in coverage exists. Courts have used the measure of a significant gap in coverage to apply the TCA's rule that local regulation cannot prohibit or effectively prohibit the provision of wireless services. See § 332(c)(7)(B)(i)(II); Second Generation, 313 F.3d at 629, 631-32; Cellular Tel. Co. v. Zoning Bd. of Adjustment, 197 F.3d 64, 70 (3d Cir. 1999). In evaluating the extent of a gap in coverage, courts have considered the availability of both in-vehicle and in-building service. See, e.g., Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 643 (2d Cir. 1999). Therefore,

11

the ZBA's conclusion, based on town counsel's representation, that in-home service was not pertinent for purposes of satisfying the requirements of the TCA was legal error and was also inconsistent with the evidence of record.[2]

For purposes of judicial review and in opposition to US Cellular's motion for summary judgment, Dunbarton argues that the record evidence does not show a significant gap in coverage other than within the Route 13 area. Dunbarton further argues that evidence in the record shows that a tower of 110 feet could provide adequate in-vehicle coverage in the Route 13 area. Dunbarton also asserts that the ZBA appropriately disregarded Hutchins's second report because it was confusing. Because the ZBA did not articulate any of those reasons as grounds for its decision, Dunbarton is impermissibly offering new grounds to justify the decision. Nat'l Tower, 297 F.3d at 21 ("A board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on different grounds.").

---

[2]It is true, however, that "[w]here holes in coverage are very limited in number or size (such as the interiors of buildings in a sparsely populated rural area, or confined to a limited number of houses or spots as the area covered by buildings increases) the lack of coverage likely will be de minimis so that denying applications to construct towers necessary to fill these holes will not amount to a prohibition of service." Willoth, 176 F.3d at 643-44. In this case, the ZBA rejected all evidence of gaps in service to homes and did not find that any such gaps were merely de minimis.

12

The ZBA initially found that an antenna tower was necessary to provide wireless service in Dunbarton, but concluded, without explanation, that a 110-foot tower would be sufficient.[3] After rehearing the application, the ZBA decided that the new information and Hutchins's second report based on that information, which it had allowed in the record, were irrelevant. The ZBA affirmed its original decision, citing Hutchins's first report.

Review for substantial evidence is deferential but is not a "rubber stamp." Southwestern Bell, 244 F.3d at 59. A town board "'is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands,'" so that when its decision is precluded by the record evidence, it must be set aside. Id. (quoting Allentown Mack Sales & Serv., Inc. v. N.L.R.B., 522 U.S. 359, 378 (1998)). Because the ZBA did not base its decision on the evidence presented to it in this case, substantial evidence

---

[3]If the first decision were the operative decision for review, it would likely be deficient because a "written denial must contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." Nat'l Tower, 297 F.3d at 21 (internal quotation marks omitted). To the extent Dunbarton relies on the first decision, rather than the decision following rehearing, that decision is insufficient to permit judicial review.

does not support its decision to deny US Cellular's application, as modified, for an antenna tower of 150 feet.[4]

B.   State Law Claim

US Cellular challenges, as a violation of RSA 674:21, the condition imposed by the ZBA that it allow town emergency services to co-locate on the antenna tower without paying rent. Dunbarton contends that this court lacks subject matter jurisdiction to consider whether the decision violates state law. See Nextel Communications of Mid-Atlantic, Inc. v. Town of Wayland, 231 F. Supp. 2d 396, 410 (D. Mass. 2002).  Under the circumstances of this case, this court need not decide the jurisdictional question.

As part of the application and rehearing process, US Cellular offered to allow the town's emergency services to use space on its antenna tower, free of charge, if it were approved at the requested minimum height of 150 feet.  US Cellular opposed the condition in the context of a tower limited to 110 feet. Because the ZBA's decision to limit the tower to 110 feet violates the substantial evidence requirement of the TCA, that

---

[4]Although the ZBA granted a variance for a 110-foot tower, that decision denied US Cellular's application for a 150-foot tower.

14

decision is not enforceable.  Therefore, the issue of violation of RSA 674:21 is moot.

C.  Relief

US Cellular seeks an injunction requiring Dunbarton to issue all necessary waivers, approvals, and permits to allow immediate construction of an antenna tower of at least 150 feet.  Dunbarton argues that injunctive relief is not appropriate and that, instead, the case should be remanded for reconsideration by the ZBA and then the Planning Board.

In enacting the TCA, Congress required that local boards act on applications within a reasonable time and that any judicial process occur on an expedited basis, which indicates that "Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another." Nat'l Tower, 297 F.3d at 21.  To implement that purpose, "in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board to authorize construction." Id. at 21-22.  When the board's decision is overturned because it failed to present written reasons supported by substantial evidence but then offered other reasons to support its decision for judicial

15

review, the appropriate remedy may be remand.  Id. at 22.

Given the existing record, where Dunbarton's own expert witness's report supports US Cellular's application for a tower of at least 150 feet, a remand for purposes of determining the height of the tower is unnecessary.  Because the ZBA decision imposing ten conditions on construction of the 110 foot tower violates the TCA and is unenforceable, those conditions no longer apply.  The appropriate remedy is an order instructing the ZBA to grant a variance to allow US Cellular to build an antenna tower of 150 feet with a structure to house accompanying equipment, subject to reasonable conditions, on property owned by Richard and Nicolette Hecker, at 12 Powell Lane, Dunbarton, New Hampshire.  To the extent any other waivers, approvals, or permits may be required for the project, US Cellular must proceed in the ordinary course as to those matters.

Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 7) is granted.

The Dunbarton Zoning Board of Adjustment shall issue a variance to permit US Cellular to build an antenna tower of 150 feet with a structure to house accompanying equipment, subject to

16

reasonable conditions, on property owned by Richard and Nicolette Hecker, at 12 Powell Lane, Dunbarton, New Hampshire.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

April 20, 2005

cc:  Stephen A. Duggan, Esquire
     Steven E. Grill, Esquire

17