15-2220(L)
United States v. Sierra (Carlos Lopez)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1ˢᵗ day of August, two thousand nineteen.

PRESENT:  JON O. NEWMAN,
          DENNIS JACOBS,
          CHRISTOPHER F. DRONEY,
               <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,
          <u>Appellee</u>,

          v.                                      15-2220(L),
                                                  15-2247(CON),
                                                  15-2257(CON)

LEONIDES SIERRA, AKA SEALED

1

**DEFENDANT 1, AKA JUNITO, AKA JUNIOR, et al.,**

**Defendants,**

**CARLOS LOPEZ, AKA SEALED DEFENDANT 15, AKA CARLITO, LUIS BELTRAN, AKA SEALED DEFENDANT 26, AKA GUALEY, FELIX LOPEZ-CABRERA, AKA SEALED DEFENDANT 14, AKA SUZTANCIA,**

**Defendants-Appellants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLEE:** | Matthew Laroche, Assistant United States Attorney (Micah W.J. Smith, Margaret Garnett, Assistant United States Attorneys, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY. |
| **FOR APPELLANT CARLOS LOPEZ:** | Susan Gail Kellman, Law Offices of Susan G. Kellman, Brooklyn, NY (Ezra Spilke, Law Offices of Ezra Spilke PLLC, Brooklyn, NY, on the brief). |
| **FOR APPELLANT LUIS BELTRAN:** | Daniel S. Nooter (Lee Ginsberg, on the brief), Freeman, Nooter & Ginsberg, New York, NY.* |

---

\* In addition to the brief prepared by his counsel, appellant Beltran also submitted a pro se brief.

**FOR APPELLANT FELIX LOPEZ-CABRERA:**  Jesse M. Siegel, Law Office of Jesse M. Siegel, New York, NY (Irving Cohen, Law Office of Irving Cohen, New York, NY, <u>on the brief</u>).

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, <u>J</u>.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Carlos Lopez, Luis Beltran, and Felix Lopez-Cabrera (the "defendants") were convicted after a jury trial in the United States District Court for the Southern District of New York (Engelmayer, <u>J</u>.) of charges including racketeering conspiracy, murder in aid of racketeering, firearms offenses, and (with respect to Lopez and Lopez-Cabrera) narcotics conspiracy and substantive racketeering. On appeal, the defendants challenge the constitutionality of their mandatory minimum life sentences and certain aspects of their convictions. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The defendants were indicted alongside 36 co-defendants on numerous counts arising out of their membership in the Bronx Trinitarios Gang, a racketeering enterprise engaged in drug trafficking and violent crime. After a twelve-week trial, a jury found Lopez and Lopez-Cabrera guilty on all counts and found that all racketeering acts were proven as to them. Beltran was found guilty of: racketeering conspiracy; conspiracy and substantive murder in aid of racketeering; and use of a firearm during and in relation to murder in aid of racketeering. Beltran was acquitted of substantive racketeering, pursuant to the jury's finding that he committed only one of the racketeering acts with which he was charged.

3

At sentencing, the defendants filed a joint motion arguing that it would be cruel and unusual in violation of the Eighth Amendment to impose the mandatory minimum sentence of life imprisonment applicable to convictions for murder in aid of racketeering. See 18 U.S.C. § 1959(a)(1). The district court denied the motion, and imposed sentences that include at least one mandatory minimum term of life imprisonment for each of the defendants.

On appeal, Beltran argues that there was insufficient evidence to support his conviction for murder in aid of racketeering. Lopez-Cabrera argues that his convictions for using, carrying, and possessing firearms in connection with crimes of violence must be vacated because his predicate acts are not crimes of violence under 18 U.S.C. § 924(c)(1)(A). All the defendants argue that the mandatory minimum terms of life imprisonment violated the Eighth Amendment. The last issue has been adjudicated in an opinion filed today.

**1.** We review the denial of a Rule 29 motion de novo, United States v. Alston, 899 F.3d 135, 143 (2d Cir. 2018), but "[a] defendant who challenges the sufficiency of the evidence to support his conviction bears a heavy burden," United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (internal quotation marks omitted). We must consider the evidence "in the light most favorable to the Government" and draw "all permissible inferences" in its favor. Id. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Beltran was convicted of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). Under § 1959, the "[d]efendant's motive must be receiving payment or promise of payment of anything of pecuniary value from the racketeering enterprise or 'gaining entrance to or maintaining or increasing position' in the enterprise." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting 18 U.S.C. § 1959(a)). "[S]elf-promotion need not have been the defendant's only, or even his primary, concern, if the act was committed as an integral aspect of membership in the enterprise." United States v. Diaz, 176 F.3d

52, 95 (2d Cir. 1999) (internal quotation marks and alterations omitted). Accordingly, "the motive requisite is satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." Id. (internal quotation marks omitted).

On the day Raymond Casul was murdered, he had chased Beltran and two fellow Trinitarios off of a street corner and fought Beltran, punching him in the face. According to the government, Beltran was motivated to kill Casul to conform with the expectations of the Trinitarios and in furtherance of his membership in the gang. That is because the attack on Beltran and his companions occurred in a location that the Trinitarios claimed as their own territory, it was perpetrated by an individual believed to be a member of a rival gang, and it was an act of disrespect to Beltran and the Trinitarios.

According to Beltran, the evidence established that the murder was motivated solely by Beltran's personal dispute with Casul stemming from their fight, citing one witness's testimony that Casul's murder had "nothing to do with the Trinitarios," and other witnesses' testimony that the murder was committed in retaliation for Casul's fight with Beltran earlier in the day. Beltran therefore argues that no rational jury could have determined that the murder was motivated by his intent to maintain or increase his status in the Trinitarios.

However, the jury also heard testimony supporting a conclusion that Trinitarios rules required retaliation for Casul's actions. One Trinitarios leader testified that the gang's written rules and regulations require that "absolutely nobody could disrespect the organization without being punished," and that if Trinitarios members are unable to resolve problems through dialogue, "[they] must use violence and . . . [they] should always [a]venge, seek vengeance for a Trinitario that is getting hurt." Trial Tr. at 84-85, 94. Beltran dismisses such testimony as merely evidence of general Trinitarios practices; however, a witness who was present at the initial encounter with Casul and who participated in his murder testified that the murder occurred "because we had been assaulted," pursuant to Trinitarios rules requiring that "if a brother bleeds . . . we all bleed" and that "nobody can disrespect a member of the organization without . . . being

punished." Trial Tr. at 3938. The government's theory is supported by the fact that four other Trinitarios, three of whom held leadership positions in the gang, assisted Beltran with the murder and with efforts to cover it up.

In addition, there was testimony that Trinitarios believed it would "look bad" if they did not retaliate for Casul's attack, Trial Tr. at 1337, and that Casul's murder "boosted [Beltran's] reputation because it showed that he wasn't scared of putting in work." Trial Tr. at 337. The evidence at trial thus supported inferences that Beltran "committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise," and that it was done "in furtherance of [his] membership," and to increase his status, in the Trinitarios. See Diaz, 176 F.3d at 95 (internal quotation marks omitted).

Beltran additionally relies on testimony that before engaging in violence against rival gang members, Trinitarios members were generally required to obtain a "green light" from gang leadership, and that no green light was sought for Casul's murder because the situation was "personal." However, that same witness testified that he was "supposed to get" the green light for Casul's murder, but failed to do so. Trial Tr. at 1045. In any event, even if such testimony could support an inference that Beltran's motives were purely personal, "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." United States v. McDermott, 245 F.3d 133, 137 (2d Cir. 2001).

Considered in the light most favorable to the government, the evidence was sufficient for the jury to infer that Beltran murdered Casul "in furtherance of [his] membership" in the Trinitarios or "because he knew it was expected of him by reason of his membership" in the gang, and that the murder therefore was committed in aid of racketeering pursuant to 18 U.S.C. § 1959(a). See Diaz, 176 F.3d at 95 (internal quotation marks omitted). To the extent that Lopez-Cabrera joins in Beltran's argument, his argument fails for the same reasons.

**2.** Lopez-Cabrera was convicted under 18 U.S.C. §§ 924(c) and 924(j) of using firearms in connection with four murders in aid of racketeering and in an assault and attempted murder in aid of racketeering. He argues on appeal that

6

those predicate acts are not "crimes of violence" under 18 U.S.C. § 924(c)(1)(A), and that the firearms convictions must therefore be vacated.

Section 924(c) prohibits the use or carrying of a firearm in relation to, or possession of a firearm in furtherance of, a "crime of violence."   18 U.S.C. § 924(c)(1)(A).   The statute defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."   Id. § 924(c)(3)(A).[1]

We have repeatedly treated it as self-evident that under New York law "attempted murder is a crime unmistakably involving an attempted use of physical force."   United States v. Praddy, 729 F. App'x 21, 24 (2d Cir. 2018) (internal quotation marks omitted); United States v. Scott, 681 F. App'x 89, 94-95 (2d Cir. 2017).   It follows that murder is a crime involving the use of such force. See id.   Lopez-Cabrera argues that murder can be committed by omission, and therefore that the use of force is not an element of his murder convictions.   But that argument is foreclosed by our holding that the "use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly."[2]   United States v. Hill, 890 F.3d 51, 60 (2d Cir. 2018).   Accordingly, Lopez-Cabrera's convictions are crimes of violence within the meaning of 18 U.S.C. § 924(c).[3]   To the extent that Lopez and Beltran join in Lopez-Cabrera's argument, their arguments fail for the same reasons.

---

[1]  We observe that the statute's so-called "residual clause," 18 U.S.C. § 924(c)(3)(B), was recently ruled unconstitutional by the Supreme Court in United States v. Davis, 139 S. Ct. 2319 (2019).

[2]  An omission can be considered one way of indirectly precipitating a harmful consequence.   See People v. Steinberg, 79 N.Y.2d 673 (1992) (affirming manslaughter conviction based on omitting to provide medical care to a child); cf. Villanueva v. United States, 893 F.3d 123, 129 (2d Cir. 2018) (pointing out that "the relevant force is the impact of the substance on the victim, not the impact of the user on the substance").

[3]  Lopez-Cabrera argues that it is not possible to determine whether his conviction

7

With the exception of the defendants' Eighth Amendment arguments, which are addressed in an opinion filed today, we have considered the defendants' remaining arguments and conclude they are without merit. The judgment of the district court is therefore **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

on Count Twenty-One of the verdict form was in connection with assault or attempted murder. However, the verdict form indicates that the jury found Lopez-Cabrera guilty of both assault and attempted murder with respect to the count underlying Count Twenty-One.